Dixon, Appellant, vs. Russell and another, Respondents.

*February 3—February 24, 1914.*

*Jurors: Examination: Interest in casualty insurance company: Master and servant: Injury from unguarded gearing: Contributory negligence: Evidence: Admissions: Res gestæ: Trial: Rebuttal: Special verdict: Unnecessary question: Instructions to jury: Positive and negative testimony: Appeal: Harmless errors.*

1. In an action for a personal injury to an employee it was not error to refuse to permit jurors to be examined as to their business relations or connections, if any, with certain insurance companies which were not claimed to be interested directly or indirectly in the controversy.

2. The exclusion of evidence tending to show that gearings in which plaintiff was hurt were so located as to be dangerous to employees in the performance of their duties, is not error of which the plaintiff can complain where the jury found in his favor upon that issue.

3. In an action for a personal injury, statements made by the plaintiff immediately after the accident, or while leaving the scene of the accident and within 100 feet thereof, to the effect that it was his own fault, are admissible as part of the *res gestæ* and hence not within the purview of sec. 4079*m*, Stats. 1911.

4. Where a witness, though present at the time of an accident, did not testify in chief as to how it happened, and the record fails to show that he knew or claimed to know how it occurred, there was no error in refusing to permit him to be cross-examined on that subject.

5. How wide a range evidence in rebuttal shall take is very much a matter of discretion with the trial court, and unless there is a clear abuse of discretion in excluding testimony such exclusion cannot be held error.

6. While the exclusion of evidence offered in rebuttal merely because it should have been offered in chief might constitute error if it related to a material issue upon which the evidence was close and conflicting, it is otherwise where the offered evidence is not very material.

7. Where an injured employee had two obviously safe ways of performing a duty, and voluntarily chose an obviously dangerous way instead, a finding that he was guilty of contributory negligence was justified.

8. In an action for a personal injury, evidence that defendants had promised the plaintiff to cover the gearing by which he was injured was properly excluded, since the defense of assumption of risk has been abolished by statute (sec. 1636*jj*, Stats. 1913) and the evidence was not material upon the issue of contributory negligence.

9. The submission to the jury of a question as to whether plaintiff was instructed, prior to his injury, not to do his work in the manner in which he was doing it when injured, was not prejudicial error, although such question related to a mere evidentiary fact, where that point was sharply litigated on the trial and all the ultimate issuable facts were covered by the other questions of the special verdict.

10. An instruction that evidence as to admissions of a party made in casual conversations and to disinterested persons is regarded as the weakest kind of evidence, was properly refused when requested as applicable to statements forming part of the *res gestæ*.

11. Where two witnesses testified to certain statements made by the plaintiff, and other witnesses testified that they were present and heard nothing to that effect, it was proper to give an instruction as to the relative weight of positive and negative testimony.

12. It is not error to refuse to give a requested instruction which is substantially given in the general charge.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

Action for a personal injury. On August 13, 1912, defendants were engaged in the work of paving and repairing streets in the city of Superior, and plaintiff, a stationary engineer, was employed by them to operate a machine for making concrete. The machine was mounted upon four wheels and a framework extending from front to back. The right-hand side of the machine, facing toward the front, was the engineer's side. The material was mixed in a revolving drum, which was about four feet three inches long. Around its center was a band gear or cog-wheel. Above the center of the drum there was a revolving shaft, seven and one-half feet from the ground, carrying a ten-inch gear wheel which meshed

with the gearing on the drum.   The distance from the frame, or rail of the frame, up to the gearing where it meshed with the cogs on the band of the drum was about five feet.   On top of the machine, toward the front end thereof, was a tank from which water was discharged into the drum, in such quantities as was needed, by means of a chain which hung down on the engineer's side, outside of the drum and over the shaft, where he could reach it from the ground.   This chain hung ten inches toward the forward end of the machine from the gearing in question.   On the other side of the machine, at the immediate rear end, there was a framework suitable to be used as a ladder for reaching the top of the machine.   The width of the machine from one side of the frame to the other was about four feet six inches, and the diameter of the drum was about four feet.   The rear wheel on which the machine was mounted was three feet high and its top was twenty-two inches back from where the chain hung down.   This chain broke near the gearing, and the plaintiff, without stopping the machine, got up on top of the rear wheel, on the engineer's side, for the purpose of mending it.   In doing so he in some way got his left hand drawn into the gearings, whose contactual surfaces revolved away from him, and received the injuries complained of.

By special verdict the jury found (1) that the gearing in question was so located as to be dangerous to employees in the discharge of their duties; (2) that the absence of any guard over the gearing was the proximate cause of the injury; (3) that the plaintiff was guilty of a want of ordinary care that contributed proximately to produce his injury; (4) that the plaintiff prior to the injury was instructed not to go upon the machine on the side where the gearing was located, when the machine was running; and (5) damages $1,000.   From a judgment entered upon such verdict in favor of defendants the plaintiff appealed.

W. P. Crawford, for the appellant.

For the respondents there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

Vinje, J.    The first error assigned is the refusal of the court to permit several of the jurors to be examined as to their business relations or connections, if any, with the Royal Insurance Company or with the Casualty Company of America.    Questions well calculated to disclose the business relations, if any, of the jurors with these two companies or their local agents were put to them in various forms by counsel for plaintiff, and the objections thereto were in each case sustained by the court.    The array was challenged.    Counsel did not claim upon the trial, nor is there now any claim or suggestion, that either of the insurance companies was directly or indirectly connected with or interested in the controversy. . Such being the case, the rulings were correct. Time should not be wasted, nor prejudice injected into a case, by an examination of jurors to determine their qualifications on a subject that is not even claimed to be relevant and which cannot be seen or presumed by the court to be so.    In *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049; *Chybowski v. Bucyrus Co.* 127 Wis. 332, 106 N. W. 833; and *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48, claims or suggestions were made to the court that insurance companies were interested in the result of the litigation, and it was held that jurors might be interrogated as to their connection with them in order to determine or aid in determining their qualifications to sit upon the jury.    The record here fails to show any connection or even claim of a connection between the insurance companies named and the suit being tried.

A number of exceptions are taken to the exclusion of evidence relating to the issue as to whether or not the gearings were so located as to be dangerous to employees in the discharge of their duties.    There were two grease cups located

on the horizontal shaft, each twenty-two inches from the gearing. The court refused to permit the plaintiff to testify as to whether or not he had to get up over the tank close to the uncovered gearing in order to fill the grease cups while the machine was in operation. The court also refused to permit the plaintiff to testify as to whether or not before the accident he was instructed to fill the grease cups while the machine was running, and evidence on the part of the plaintiff to the effect that he would have to get up on the machine to screw down the grease cups so that they would feed was excluded. All this excluded evidence was material upon the issue as to whether the gearing was so located as to be dangerous to employees. But inasmuch as the jury found for the plaintiff on this issue the error becomes immaterial.

Defendant's foreman, Carroll, was standing near the machine at the time of the injury, and he was permitted to testify that immediately after plaintiff was hurt the witness turned around and was then about five feet from plaintiff, and asked him how did it happen, to which plaintiff replied, "It was my own fault, my fingers got ketched in the gearing." Plaintiff then proceeded immediately across the street to the office of the Superior Water, Light & Power Company, and as he was going towards the office and while within 100 feet of the place of the accident he said to the witness Ross that it was his own fault—nobody's fault but his own. The witness Ross did not claim to have seen the accident and testified in chief only as to what the plaintiff said to him as he was going towards the office of the Superior Water, Light & Power Company. It is urged that the testimony of the foreman, Carroll, was improperly received because sec. 4079m, Stats. 1911, provides:

"In civil actions for damages caused by personal injury no statement made or writing signed by the injured party within seventy-two hours of the time the injury happened or accident occurred, shall be used in evidence against the party

making or signing the same unless such evidence would be admissible as part of the *res gestæ.*"

That the statements made by the plaintiff to the witnesses Carroll and Ross immediately after the injury were admissible as part of the *res gestæ* is clearly established by the decisions of this court. *Rideout v. Winnebago T. Co.* 123 Wis. 297, 101 N. W. 672; *Zoesch v. Flambeau P. Co.* 134 Wis. 270, 114 N. W. 485; *Cohodes v. Menominee & M. L. & T. Co.* 149 Wis. 308, 135 N. W. 879. The court also properly excluded any cross-examination of the witness Ross as to how the injury happened, because the witness did not testify in chief as to how it happened, nor; so far as the record shows, did he know or claim to know how it occurred.

In proving his case in chief the plaintiff introduced testimony as to what his duties were, as to what were the positions of the different employees about the machine at the time he was injured, and as to orders and directions alleged to have been given to him by the defendants as to the management of the machine. Among other things he testified that one Detlinger was present and at times gave orders how the work should be done; that in his presence *Mr. Russell* told plaintiff not to shut the machine down a minute; that he must keep it running; and that he instructed plaintiff to go up and fix the chain at the time of the accident. He also testified that before the accident he was told by Mr. Detlinger to do the work of fixing the trap or the tank while the machine was running. *Mr. Russell* denied that he gave any such directions to plaintiff as were testified to by him, and so did Mr. Detlinger, and the latter testified that he told the plaintiff that if he wanted to go up on the machine he should go on the far side, or shut it down; that he told him more than once that it was dangerous. Upon rebuttal plaintiff offered several witnesses to testify to the fact that no such orders or directions were given the plaintiff as were testified to by *Mr. Russell* and Mr. Detlinger. The court excluded such testimony on the ground

that it was the duty of the plaintiff to put in all his evidence on the subject in chief, and that the offered testimony was not strictly rebuttal to any new matter brought out by the defense. How wide a range evidence in rebuttal shall take is very much a matter of discretion on the part of the trial court, and unless there is a clear abuse of such discretion in excluding testimony the exclusion cannot be held reversible error. *Stanhilber v. Graves,* 97 Wis. 515, 73 N. W. 48. We should have been better satisfied had the trial court admitted this offered testimony; and had it related to an issue upon which the evidence was close and conflicting it might have had to be held prejudicial error to exclude it. But the testimony as to the construction and operation of the machine, and as to just what the plaintiff did and how he stood at the time he was injured, is practically undisputed, and upon plaintiff's own statement the jury were justified in finding him guilty of contributory negligence. The evidence shows that at the time plaintiff was injured he was standing upon the rim of a wheel three feet in diameter, the rim of which had projections on it to enable it to engage the surface over which it traveled; that he reached over about twenty-two inches to one side and about two feet forward to 'catch hold of the end of the chain which hung only ten inches from an open gearing whose contactual surfaces so revolved as to draw his hand into it if it became caught therein. When plaintiff stood on the wheel the intermeshing surfaces of the gearing were about on a level with his chin. As before stated, he was required, in order to catch hold of the chain, to reach sideways and forward and to put his hand very close to the gearing. His own testimony as to how he got hurt is as follows:

"The way I come to get my hand in that gearing, I was fixing the chain which was broke. When I fixed the chain, I did not draw the chain over the gearing; I drew it over towards me when I stood on the wheel; I drawed it to the side of the gearing. I stood on this wheel which is in the rear

of the gearing.   When I drew it to me I drew it as I drew it across here (indicating).   I drawed it pretty near even with the gearing; you can draw it alongside of the gearing.   I was standing on the wheel in the rear of the gearing; the chain is to one side of the gearing . . . I had the chain right alongside of the gearing.   The chain as it hung down from the tank hung towards the front end of the drum, and when I stood on the wheel I was toward the rear end of the drum; when I drew it to me.   I did not draw it somewheres near across that gear or this cog-wheel on the big drum; I drawed it near the side of the cog-wheel . . .   I was putting a wire on it to put it together; wiring the two pieces of the chain together; the piece that was left and the piece that was broke off . . .   (The chain) hung down past the shaft about four inches.   I did not lose my balance . . . I was not dizzy or anything of that sort; nobody struck me . . .   I had a wrist glove on; by wrist glove I mean a glove that the glove projects over the wrist; goes up over my coat; I had on a jacket.   The finger part of the glove went in and my fingers were in it."

Inasmuch as plaintiff had two obvious safe ways of fixing the chain, the jury no doubt found he was guilty of contributory negligence because he voluntarily assumed an obviously dangerous way instead of either of the two safe ways.   One safe way was to shut the machine down and stop the revolving gearings; the other, was to go up on the frame on the other side, where he would have been equally near to the chain, and fix it from that side.   Had he done so, it would have been impossible for him to have been injured by the gearing, because the contactual surfaces thereof would have revolved towards him and so could not have drawn his hand into the gearing even if he had come in contact with it.   The jury presumably found that his negligence consisted in attempting to fix the chain from the side he did in the face of obvious danger, when, either by shutting the machine down or going to the other side, he could have fixed it with perfect safety. Such being the uncontradicted testimony, the offered evidence excluded upon rebuttal does not become very material and its exclusion cannot be held to be prejudicial error.

The plaintiff offered to show that the defendants had some time previous to the injury promised to cover the gearing, but the court excluded the evidence. Such excluded evidence would have been material on the issue of assumption of risk, but there was no such issue in the case, since the statute (sec. 1636$jj$, Stats. 1913) abolishes that defense. The offered evidence was not material upon the question of plaintiff's contributory negligence.

In arguing the case to the jury plaintiff's counsel said: "You heard the questions put to these witnesses called upon the stand this morning and the objections to them," referring to questions propounded to certain witnesses in rebuttal. The court remarked: "The jury has no right to consider evidence that is excluded nor questions to which answers were excluded." The plaintiff excepted to such remarks of the court, claiming them to be prejudicial. The only redeeming feature about the exception is that it is not very seriously urged in the brief.

Among other questions submitted to the jury was the following: "Was the plaintiff, prior to the injury, instructed not to go upon the machine on the side where the gearing was located, when the machine was running?" It is claimed this was prejudicial error because the submitted question bore upon no ultimate issuable fact. That is true. The verdict would have been and was complete without it. But the fact as to whether plaintiff was so notified or instructed was sharply litigated upon the trial, and its inclusion cannot be held to be prejudicial error where all the ultimate issuable facts are covered by the other questions of the special verdict.

The plaintiff requested the court to charge the jury as follows:

"Although admissions of a party satisfactorily proven tending to disprove the claim made by him may be considered by the jury, yet evidence of casual conversations or admissions by a party, made in casual conversations and to disinterested persons, are regarded by law as very weak testi-

mony; owing to the liability of the witness to misunderstand
or forget what was really said or intended by the party.    All
admissions made by a party to third and disinterested per-
sons is the weakest kind of evidence that can be produced."

Substantially similar instructions were approved in *Haven
v. Markstrum,* 67 Wis. 493, 30 N. W. 720, and in *Emery v.
State,* 101 Wis. 627, 657, 78 N. W. 145, where they were
applicable.    The court refused to give the instruction, and
the plaintiff excepts on the ground that it was relevant and
material to the testimony given by the witnesses Carroll and
Ross as to what the plaintiff is claimed to have said to them
immediately after the injury occurred.    The refusal was
proper.    The evidence given by the witnesses referred to, was
not in the nature of admissions within the meaning of the in-
struction requested.    The evidence was strictly a part of the
*res gestæ*—statements or expressions made by the plaintiff at
the time of his injury or so near thereto as to characterize the
act.    There is a clear distinction between evidence of such
statements and evidence of admissions made subsequent to the
injury and so remote therefrom as not to be a part of the
*res gestæ.    Felt v. Amidon,* 43 Wis. 467; *Hermes v. C. & N.
W. R. Co.* 80 Wis. 590, 50 N. W. 584; *Garske v. Ridgeville,*
123 Wis. 503, 102 N. W. 22.

Plaintiff also complains of the instruction given with refer-
ence to proximate cause in so far as it affected the question of
contributory negligence, contending that it omitted an essen-
tial element, to wit, the element of reasonable anticipation.
It is to be regretted that counsel did not print the whole in-
struction as given by the court.    If he had, he would have
discovered that the element of reasonable anticipation was
properly covered by the instruction given.    The court said:

"You cannot find the absence of a guard over the gearing
in question to have been the proximate cause of the injury
here unless such injury was the probable as well as the nat-
ural consequence of the absence of such guard, and you can-

not find the absence of a guard over the gearing in question to have been the proximate cause of plaintiff's injury unless a person of ordinary intelligence and prudence ought reasonably to have foreseen that an injury to another might probably follow as a natural result of the absence of such guard."

The following instruction requested by plaintiff was refused: "As to question 3, you are instructed that the mere fact that plaintiff knew, understood, and appreciated the danger of injury from the exposed gearing will not justify you in finding him guilty of contributory negligence." The court in its charge under this question said: "You are instructed that the mere fact that the plaintiff knew, understood, and appreciated the dangers of the exposed gearing will not justify you in finding him guilty of contributory negligence, but it must appear that, knowing, understanding, and appreciating 'the dangers of the exposed gearing, he did not exercise ordinary care to avoid injury therefrom." It will thus be seen that the requested instruction was substantially given in the charge.

Under question 3 the court instructed the jury as follows:

"There is evidence in the case as to certain statements made by the plaintiff immediately after the accident as to its being his own fault. You are instructed that where witnesses testify to statements claimed to have been heard by them, and other witnesses testify that they did not hear such statements, the positive testimony, if otherwise credible, is usually entitled to more weight than negative testimony."

It is claimed it was error to give this instruction, because there was no situation disclosed by the evidence to which it applied. In this counsel is mistaken. The witnesses Carroll and Ross on behalf of the defendants testified that plaintiff made such statements to them. The witnesses Zimmerman, Janitz, and Bigby each testified that he was near the plaintiff at the time these statements were claimed to have been made and that he did not hear plaintiff make them or

anything to that effect, and that in his opinion he was near enough to plaintiff to have heard them had they been made.

The claim that the evidence is not sufficient to sustain the finding of contributory negligence is negatived by what has already been said.

*By the Court.*—Judgment affirmed.