Lozon, Respondent, vs. Leamon Bakery Company, Appellant.

*January 14—February 10, 1925.*

*Automobiles: Collisions at street intersections: Contributory negligence: Jury: Voir dire examination: Questions: Interest in insurance carrier: Damages: Evidence as to value of used automobile: Market reports: Special verdict.*

1. The fact that an automobile driver has the right of way at a street intersection does not absolve him from the duty to use ordinary care for his own safety. p. 89.
2. In an action to recover for damage to an automobile sustained in a collision with another automobile at a street intersection, the evidence is *held* sufficient to support the special finding of the jury that the plaintiff was not guilty of contributory negligence and also the amount of his damages as found by the jury. p. 89.
3. A publication called the National Used Car Market Report which lists prices of used automobiles, if ever competent evidence as to the value of a particular automobile, was properly refused in evidence in this case, as the report offered was for

July, 1923, and there is no presumption that prices were the same in the January preceding, during which month the damage occurred. p. 90.

4. As a general rule the extent of a *voir dire* examination is largely in the discretion of the trial court. p. 91.

5. The right to make an investigation on the *voir dire* permits inquiry of jurors, in good faith and in a proper manner, as to whether they are in any way concerned with any insurance company which is pecuniarily interested in the litigation. p. 92.

6. An inquiry by counsel as to whether a juror had any business relations with insurance companies carrying insurance on automobiles, the collision of which was the basis for the litigation, without further comment, was not in excess of his rights, nor calculated to excite prejudice. p. 92.

7. The refusal of the court to submit certain specific questions relating to alleged contributory negligence which was covered by another question submitted, is not error. p. 93.

APPEAL from a judgment of the circuit court for Douglas county: W. R. FOLEY, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Pickering & Hughes* and *A. C. Gregg,* all of Superior, attorneys, and *McMahon, McMahon & Hayes* of Milwaukee, of counsel, and oral argument by *C. J. Hughes.*

For the respondent there was a brief by *Wilson & Wilson* of Superior, and oral argument by *H. C. Wilson.*

JONES, J. The plaintiff while driving his Oldsmobile sedan in a northerly direction on East Second street collided with the truck of the defendant company, which was being driven in an easterly direction on Cass avenue, at the intersection of the two streets in the city of Superior, Wisconsin. The collision occurred at about 10 o'clock in the forenoon of January 10, 1923. There was a small amount of snow upon the pavement of the streets in question but not enough to cause skidding.

The plaintiff testified that he was driving his automobile, in which he was transporting two passengers for hire, at a rate of about fifteen miles an hour, but that as he approached

the railroad track, which crosses East Second street about sixty feet south of the intersection, he slowed down to ten miles an hour; that at the time he crossed the railroad tracks he looked both to the left and to the right, but that he looked only to the right after passing the tracks, as the traffic from that side was generally the heaviest and he had not seen any automobiles on Cass avenue when he looked to the left before crossing the railroad tracks; that he heard no warning signal of any kind and did not see the defendant's truck until he was more than half way across Cass avenue at the intersection, when he suddenly became aware of the truck upon his immediate left; that his car was struck amidships by the front of the truck and that he at once put on the brakes, stopping the forward movement of his car, but that the force of the truck pushed the Oldsmobile sideways against the telephone pole on the northeast corner of the intersection; that the collision took place in the northeast portion of the intersection after he had more than half crossed Cass avenue.

Olga Ronning, one of the passengers in the plaintiff's car, testified that the speed of the plaintiff's car was about ten miles an hour at the time of the accident; that he had been struck by the truck of the defendant after passing more than half way across Cass avenue. William St. George, the other passenger, testified that the speed of the car was about ten miles an hour at the time of the accident; that he had seen the defendant's truck moving towards the intersection while about 200 feet away from the intersection, and had then noticed it again just before it entered the intersection; that he warned the plaintiff as to the approach of the truck, but received no response from the plaintiff; that the front of the truck struck the sedan amidships after the sedan had more than half crossed Cass avenue; that the truck was moving at a fast rate of speed upon the left side of Cass avenue about eight feet from the curbing. One George Cole, who was in the pool hall on the northwest corner of

the intersection, testified that he saw the truck just before the collision and while it traveled about ten feet; that it was going about twenty or twenty-five miles an hour; that the truck was on the left side of the street about eight feet from the curbing when it entered the intersection; that he did not see the actual collision but heard it and hurried out, to see the truck facing the northwest and the Oldsmobile against a telephone pole on the northeast corner of the intersection; that he thought the driver of the truck was changing gears when he entered the intersection, as he was looking down into the truck.

The driver of the defendant's truck testified that he had stopped his car on the left side of Cass avenue facing west to make a delivery and then had turned around and proceeded towards the intersection on the right side of the street at about ten miles an hour; that he was in second gear, and that the truck could not go over twelve miles an hour in second gear; that while about seventy feet away from the intersection he had looked to his right and had seen no car approaching on East Second street; that he could see as far as the trestle of the Great Northern Railroad, which was about 200 feet from the intersection; that he had then looked to the left and watched the approach of an automobile from that direction, and that when he saw that this car was going to stop he glanced to the right again just as he started into the intersection; that he saw the plaintiff's car upon his immediate right, and that before he could stop, the plaintiff's car swerved a little and collided with his right front fender, forcing the truck around, and that the plaintiff's car was shunted off against the telephone pole; that he did not strike the plaintiff's car with the front of the truck, and that only the steering rod and the right front fender of his car were in the least injured; that the collision took place in the southeast portion of the intersection, and that after the collision his car was in the middle of East Second street and on the north side of Cass avenue, facing the northwest cor-

ner of the intersection, while the plaintiff's car was in the northeast corner.

It is one of the main contentions of the defendant's counsel that the court erred in failing to find that the plaintiff was guilty of contributory negligence as a matter of law. The finding of the jury that the defendant was negligent is not questioned. No claim is made that the plaintiff was traveling at an excessive rate of speed, and it is conceded that he had the right of way. But it is argued that there was no obstruction to his view, and that if he had looked to his left at a distance of sixty feet from the center of the intersection, or when he was seventy-five or eighty feet from the point of the collision, he would have seen the defendant's truck and could have avoided the accident. The plaintiff testified that before reaching the railroad he had looked to the left and to the right, and in this he was corroborated by the witness St. George; and that he saw no car on Cass avenue and that he heard no warning from St. George; that when he reached the railroad track he looked to the left and saw nothing moving on Cass avenue. As he reached the railroad track it would be natural that he should look for trains, and as he approached the intersection that he should look more particularly to the right for cars on Cass avenue coming from the east and having the right of way. Two witnesses besides the plaintiff testified that the defendant's truck came along Cass avenue and into the intersection on the wrong side of the street and that the collision took place when the plaintiff's car had passed over two thirds or three fourths of the distance across the intersection. Despite the claim of the defendant's counsel that the truck could not be driven more than twelve miles an hour, two witnesses testified that it was going at an estimated rate of twenty-five miles an hour. It is argued by the plaintiff's counsel that the plaintiff had made a proper lookout before reaching the railroad track, and from that point it was of first importance

to watch for trains and for cars on Cass avenue, which would have the right of way. There is undoubtedly force in the claim of defendant's counsel that the plaintiff should have looked to the left after crossing the railroad tracks. It is doubtless true, as contended, that the fact that the plaintiff had the right of way did not absolve him from the duty to use ordinary care for his own safety. Nevertheless, the location of the railroad track near the intersection, and the possibility of traffic from the plaintiff's right, were circumstances which the jury had the right to consider in passing on the question of his negligence. The proof that the plaintiff had safely crossed most of the intersection and that his car was struck by the truck coming swiftly on the wrong side of the street also had a bearing on that question. On this issue the burden of proof was upon the defendant. We cannot say as a matter of law that there was no credible evidence to support the finding of the jury.

Considerable testimony was given as to the damage caused to the plaintiff's car. It had been purchased in 1921 for $2,365. It had been driven about 5,000 miles up to January, 1922, when in another collision it had been badly wrecked. It had been rebuilt at a cost of $1,300, and there was testimony that it was at the time of the collision in question as good as new, although this was disputed. There had been salvage of the value of $125. The plaintiff testified that after the first collision the car had been out of commission nearly all of the time until the accident of January, 1923. The price of the Oldsmobile car of this type when new had been reduced and at the time of the collision was $1,800. The estimates of the witnesses on the value of the car varied from $1,800 to $900 and the jury assessed the damages at $1,300. In the course of the examination of one of the witnesses the defendant's counsel offered part of a publication called the National Used Car Market Report which he testified was in common use by the automobile dealers of Supe-

rior in their business of buying and selling used cars. The report was published every three months in Chicago, Illinois, and the one offered was the July number, the January issue not being available. The witness said that the publication was not followed rigidly, as each car had to be considered with respect to its particular condition. Such a publication, if admitted, would be admitted under an exception to the general rules of evidence, and it is not necessary to consider whether under any circumstances it would be competent, since it did not relate to prices at the time of the accident. It is well known that the prices of automobiles often rapidly change, and there was no presumption that the prices in January were the same as in the following July. The proposed evidence was duly objected to, and in our opinion properly rejected. The question of damages was a jury question and was fairly submitted, and we are not disposed to reverse the answer of the jury, approved by the trial court.

In the examination of jurors on their *voir dire* plaintiff's counsel asked ten of the jurors whether he or she had any business relations with casualty or indemnity insurance companies carrying insurance upon automobiles. Two of the jurors answered that they represented insurance companies of this kind as agents; several others stated that they carried insurance of this kind on their cars. It does not appear that any comments were made by the plaintiff's counsel during the examination, or that any witness was interrogated on the subject, or that the inquiry went further than as indicated above. Counsel for the defendant have furnished a very able brief on this subject, arguing that the testimony on the issue of contributory negligence and damages was very evenly balanced, and indeed that the preponderance was in the defendant's favor. The brief points out the serious abuses which are practiced when counsel for the plaintiff, in personal-injury cases, improperly attempt to prejudice jurors by indirectly suggesting that a rich corporation and not the

defendant will be called upon to pay any judgment which may be rendered. The decisions of the courts abound in illustrations where this attempt has been made by counsel unmindful of the ethics of their profession. We are urgently asked to prescribe some general rule which will prevent such abuses. The request is easy to make but one not so easily complied with. The plaintiff in this case as in all cases has a right to a trial before fair and impartial jurors. It follows that he had the right to ascertain whether they had any pecuniary interest in the litigation. This may be highly important in determining whether the right of challenge should be exercised. It is the general rule that the extent of this examination on the *voir dire* rests largely in the discretion of the trial court. Up to this time no case seems to have been reversed in this court for abuse of the privilege in an examination of this kind, although in a recent case, where there was misconduct of counsel in his persistent effort to prejudice the jury against the defendant in attempting to show by a witness that they were insured, it was held error. But since it appeared that the only issue involved was the amount of damages and they were not excessive the error was not prejudicial. *Smith v. Yellow Cab Co.* 173 Wis. 33, 180 N. W. 125. In another case it was held error for plaintiff's counsel to interrogate defendant's counsel, either at the bar or on the stand as a witness, as to whether an insurance company was pecuniarily interested in the litigation. *Chybowski v. Bucyrus Co.* 127 Wis. 332, 106 N. W. 833. But it has been held in this court that in cases of this character plaintiff's counsel may ask the jurors whether they are directly or indirectly concerned in any casualty insurance company. *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48. In *Faber v. C. Reiss Coal Co.* 124 Wis. 554, 102 N. W. 1049, it was suggested to the trial court that an insurance company was pecuniarily interested in the result, and it was held proper to inquire whether a juror was a stockholder in that

company. See, also, *Chybowski v. Bucyrus Co., supra.* In *Dixon v. Russell,* 156 Wis. 161, 145 N. W. 761, there was no claim that certain insurance companies had any connection with or interest in the controversy. It was held that it was not error for the court to refuse to permit several of the jurors to be examined as to their business relations or connections with the companies.

It seems to be settled in this state that the right to make an investigation on the *voir dire* permits inquiry of jurors as to whether they are in any way concerned with any insurance company which is pecuniarily interested in the litigation, but that the inquiry should be conducted in good faith and in such a manner as not to inform the jury of matters calculated to excite prejudice. Primarily the regulation of such examination rests with the trial court. It is undoubtedly a difficult and delicate task but one which should be fearlessly performed, and if counsel for the plaintiffs in this class of cases find that a jury has been discharged or a new trial granted or a reversal in this court because of real misconduct in this respect, they have no ground for complaint. We do not find, however, that in this case counsel for the plaintiff transgressed the rule as declared in the cases already cited.

It is another assignment of error that the court refused to submit certain specific questions. By the special verdict six questions were submitted: (1) as to ordinary care of the defendant as to his rate of speed; (2) as to proximate cause; (3) as to ordinary care of the defendant in respect to lookout; (4) as to proximate cause in case of such failure; (5) as to want of ordinary care on the part of the plaintiff which proximately contributed to the collision; (6) as to damages. The questions requested by the defendant were:

"(3) Ought the plaintiff, in the exercise of ordinary care, to have seen the defendant's truck in time to have avoided the collision? (4) Did the plaintiff at the intersection of Cass avenue and Second street reduce the speed of his auto-

mobile to such a rate as would tend to avoid danger of acci-
dent? (5) Did such failure to so reduce the speed of his
automobile proximately contribute to produce the damage
to plaintiff's automobile?"

The proposed questions amounted to a subdivision of the
question submitted, which related to contributory negligence.
This question covered the ultimate facts on which the de-
fendant relied. There were numerous facts evidentiary in
their nature which had to be considered in determining the
main question, but it was not necessary that they should be
made the subject of specific questions. The court gave the
jury full instructions applicable to this question, and to
these instructions no objection is made. We hold that no
error was committed in respect to the point raised. *Baraboo
v. Excelsior C. Co.* 171 Wis. 242, 177 N. W. 36; *Berndt v.
Cudahy,* 141 Wis. 457, 124 N. W. 511; *Murphy v. Herold
Co.* 137 Wis. 609, 119 N. W. 294; *Wisconsin F. L. Co. v.
Bullard,* 119 Wis. 320, 96 N. W. 833; *Mauch v. Hartford,*
112 Wis. 40, 87 N. W. 816.

*By the Court.*—Judgment affirmed.