WALKER, Respondent, vs. POMUSH, Appellant.

*October 14—November 10, 1931.*

46

For the appellant there was a brief by *Curran & Sher* of Superior, and oral argument by *Robert E. Curran.*

For the respondent there was a brief by *Crawford & Crawford* of Superior, and oral argument by *Raymond A. Crawford.*

FOWLER, J. The defendant lays as grounds for reversal of the judgment that as matter of law (1) the defendant was not negligent; (2) the plaintiff was guilty of contributory negligence; (3) the damages are excessive; (4) the court erred in limiting cross-examination of the plaintiff respecting certain allegations of the complaint; (5) the plaint-

iff's counsel persisted in keeping before the jury the fact that the defendant carried indemnity insurance.

(1) Upon the bare facts above stated it is manifest that the jury were justified in finding the defendant negligent. He saw the plaintiff during his whole flagging operation. He turned in behind the plaintiff instead of keeping well to his right as he might have done without inconvenience to himself or interference with other users of the highway. He had just started up his car, and was going so slowly that he could have stopped it instantly. Notwithstanding this he struck the plaintiff. This so plainly spells negligence that further discussion of the point is needless.

(2) That the plaintiff was not negligent seems equally plain. He was required by sec. 193.30, Stats., to flag his car. He performed the flagging operation in the manner that it is regularly performed. He had equal right to the highway with other users of it. He might properly assume that drivers of the waiting automobiles would observe a proper lookout and would see him and would not wilfully or carelessly run him down in their oncoming. To uphold defendant's contention it would have to be held as matter of law that plaintiff was required to go backwards or sideways or keep turning around while passing to the point at which he would board his car. It is true, as defendant contends, that a workman on the street must pay some attention to traffic. "He cannot let his thoughts go wool-gathering." *Dinan v. Chicago & M. E. R. Co.* 164 Wis. 295, 159 N. W. 944. The plaintiff could not in utter heedlessness step in front of an oncoming car, as defendant's counsel seem to think he did. But it is sufficient to say in answer to this that the jury found that he did not so step, upon evidence amply sufficient to support their finding. The plaintiff, after completing performance of his statutory duty, possessed at least equal rights with other persons on the street about to board street cars. Their rights under somewhat similar circumstances are considered in *Nelson v. Pauli,* 176 Wis. 1, 6, 7, 186 N. W. 217.

(3) The jury were justified in concluding that the plaintiff's principal injury was a permanent separation of the parts of the left side of the sacroiliac joint, resulting in great pain, lameness, and inability to work. His loss of wages up to the time of the trial amounted to $1,500. He was earning $125 to $130 a month at the time of his injury; he had been working at his then occupation for years prior to his injury without loss of time or lameness or trouble with the sacroiliac joint. He was incapacitated for work as a result of the injury. His expectancy of life was 16.72 years. Nine hundred dollars was allowed him for pain and suffering up to the time of trial and $4,000 for loss of earnings and pain and suffering in the future. It is true that he had arthritis of apparently long standing, which ordinarily causes some pain and inconvenience, but this had not interfered with his work. And it is also true that at time of trial he was suffering from kidney trouble, but his physician attributed this to the injury received at the time involved. Defendant's counsel urge that the award was probably enhanced by the fact that at time of trial the plaintiff's heart was dropping beats, and that while it was conceded that this condition was not in any way connected with the injury inflicted by the defendant, it aroused the sympathy of the jury and this affected their verdict. We cannot indulge such a presumption. And if the fact be as claimed, it would quite as likely affect the verdict upon a subsequent trial as upon this. We are of opinion that the damages assessed are not beyond the limit that the jury might properly go.

(4) The complaint under this head is that after the plaintiff had testified that he had not been paid compensation under the workmen's compensation act and made no claim for such compensation, he was asked on cross-examination if he had served a notice or demand on his employer to sue the defendant. This was objected to and the objection sustained. Plaintiff was then asked if he had not alleged in his complaint that he had given such notice. Objection to this was

also sustained. There is no claim or intimation that the plaintiff has in fact been paid or claimed any compensation under the act or served any notice upon his employer. The inquiry was therefore to an immaterial point and could in no wise prejudice the defendant. If it were a fact or were now claimed that compensation had been paid or was payable by the employer, as indicated in *Theby v. Wisconsin P. & L. Co.* 197 Wis. 601, 222 N. W. 826, 223 N. W. 791, the trial court could protect the defendant from liability for double payment by requiring as condition of payment of the judgment that the plaintiff secure a release or other appropriate instrument relieving the defendant from possibility of liability to the employer or insurance carrier. Doubtless upon showing warranting it an appropriate order amply protecting the defendant will be made in this case if requested.

(5) The facts urged upon this point are (1) that upon *voir dire* examination of the jurors they were asked whether they were interested in or insured by the Fidelity and Casualty Insurance Company; and (2) that plaintiff's counsel on cross-examination elicited from one of defendant's physicians that about one-fourth of his business was done in compensation cases for industrial insurance companies. The defendant's point is as to (1), and it is obviously well taken, that these inquiries were made for the purpose of enhancing the damages by insinuating to the jury that the defendant carried an indemnity policy on his car and that not he but his insurance company would have to pay the judgment. Such tactics should not be adopted by trial lawyers, and that lawyers persist in using them is to be regretted. Complaint is made of such practice in nearly every automobile collision case that comes before us and we note that the complaining lawyers are not infrequently complained against. It is true that this court has held it proper to inquire as was here done of jurors on the *voir dire* when such inquiry is made "in good faith." *Lozon v. Leamon Bakery Co.* 186 Wis. 84,

202 N. W. 296.   This seems to imply that if counsel had any reason to believe or suspected that any juror had stock in or was insured in the insurance company named, it was proper to make the inquiry here made, but if no such reason or suspicion existed the inquiry was improper.   That the purpose of the question was to insinuate that the defendant was insured is inferentially supported by counsel's inquiries of the physician testifying for defendant showing that one-fourth of his work was done for industrial insurance companies and that such companies usually paid him for his work.   Special complaint of this is made under (2).   This was manifestly utterly immaterial, as plaintiff's counsel well knew.   But while the trial judge admitted this testimony upon the trial, part of it over objection, he later stated that the testimony was improperly admitted and was stricken out, and instructed the jury to disregard it.   Under all the circumstances we cannot say that the objectional practices of plaintiff's counsel were harmful to defendant.   However, we do not approve the practice of making the insinuation or exposing the fact that the defendant is insured, and counsel should not without good reason do either, and trial courts should discourage such practice by strongly denouncing it whenever it is indulged in without good reason and so handle the matter as to prevent as far as possible any possible resulting prejudice.

Plaintiff's counsel urge that the appeal is utterly without merit and request that double costs be imposed. · While assignments (1), (2), and (4) might perhaps be so considered, (3) and (5) cannot be.

*By the Court.*—The judgment of the superior court is affirmed.