FILIPIAK and another, Respondents, v. PLOMBON, d/b/a PLOMBON FUNERAL HOME, Appellant.

*January 9—February 6, 1962.*

For the appellant there were briefs and oral argument by *Frank L. Morrow* of Eau Claire.

For the respondents there was a brief by *Herrick & Sigl* of Eau Claire, and oral argument by *Kenneth L. Sigl*.

CURRIE, J.   While additional issues are raised by defendant, we limit this opinion to passing upon these three questions:

(1) Does the evidence support the finding that the defendant was negligent with respect to maintenance of the private walk?

(2) Does the evidence support the finding that Mrs. Filipiak was negligent as to the care she exercised for her own safety?

(3) Was it prejudicial error for the trial court, in conducting the *voir dire* examination of the jury, to have asked questions which indicated to the jury that defendant was insured against the liability sought to be enforced by plaintiffs?

## *Negligence of Defendant.*

Defendant contends that the record is devoid of evidence to sustain the finding that he was negligent with respect to the manner in which he maintained the private walk on which Mrs. Filipiak fell. If this contention is correct, it would result in a reversal of the judgment and dismissal of the complaint.

The accident occurred on January 19, 1958, in the city of Stanley, Chippewa county. At about 11 a. m., a party of five, including Mrs. Filipiak, came to defendant's funeral home to view the body of a deceased neighbor. The weather was cloudy and there was a mist or light drizzle which had commenced earlier in the morning and had continued up until the time of the accident. This mist or drizzle froze on the private sidewalk which ran between the public walk and the outside flight of six steps that led up to the front entrance of the funeral home. At about 12:30 p. m., Mrs. Filipiak and her companions left the funeral home through the front entrance. In so departing, it was first necessary to step upon a small platform and then descend the steps to the private walk. The other members of the party preceded Mrs. Filipiak down the steps and reached the public

walk without incident. Mrs. Filipiak descended the steps, placed one foot on the private walk, and had just placed the other foot on such walk when she slipped and fell, severely striking the back of her head.

The private walk only extended a distance of six or seven feet from the flight of steps to the public walk. A canvass canopy covered the platform, steps, and private walk. However, this canopy only provided protection from above, the sides being open. At about 8:30 a. m. on the day of the accident, defendant's son arrived at the funeral home. He noted that walks "all over town" were slippery, including the public and private walks in front of the funeral home. He tried to remove the ice on the private walk with a shovel but to no avail. Then he swept the walk and got some water-softener salt and sprinkled that on it. He stepped on the chunks of salt to crush them and spread the salt, but this did not seem to have any effect in overcoming the slippery condition.

Defendant arrived at the funeral home at about 9:30 or 10 o'clock that morning and found both the public and private walks slippery. He took a broom and swept the private walk, but put no sand, salt, or other substance on it to alleviate the slippery condition. There was water-softener salt available in the funeral home but no sand or ashes. One of plaintiffs' witnesses testified that the application of salt, sand, or cinders to an icy walk will make a nonskid surface. However, he further stated that where a continuing rain or mist is falling and freezing, repeated applications of such materials are necessary to overcome the slipperiness.

The private walk constituted a place of employment within the meaning of the safe-place statute, sec. 101.06. *Werner v. Gimbel Brothers* (1959), 8 Wis. (2d) 491, 493b, 99 N. W. (2d) 708, 100 N. W. (2d) 920. Accumulations of ice and snow on a walk or driveway constituting a place

of employment may subject the employer to liability under the safe-place statute. *Werner v. Gimbel Brothers, supra,* and *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. (2d) 601, 608, 609, 111 N. W. (2d) 495. We deem that there was ample evidence upon which the jury could find that defendant was negligent in not maintaining the walk surface in as safe a condition as the nature thereof would reasonably permit. Therefore, defendant is not entitled to a dismissal of the complaint.

### Negligence of Mrs. Filipiak.

By their motion for review, plaintiffs seek a review of the trial court's ruling in submitting, over objection, the question in the verdict which inquired as to whether Mrs. Filipiak was negligent with respect to the care which she exercised for her own safety, and the accompanying question of causation. Inasmuch as we herein conclude that there must be a new trial because of prejudicial error committed during the course of the trial, we deem it advisable to pass on this issue as a guide to the trial court in conducting the second trial.

All four of the people who accompanied Mrs. Filipiak to the funeral home on the day of the accident preceded her out of the building and successfully traversed the slippery private walk without falling. One of these was an elderly lady in her eighties. These facts would reasonably permit a jury to draw the inference that, had Mrs. Filipiak used the same care in stepping and walking upon this private walk as did her four companions, she would not have fallen.

Furthermore, there was testimony, disputed by Mr. Filipiak, that as she came out of the funeral home she was engaged in conversation with defendant, and that she was facing him at the time she fell. If this testimony was believed by the jury, they could also reasonably have inferred that she was not watching where she was walking.

It is our conclusion that there was sufficient evidence upon which the jury could determine that Mrs. Filipiak was negligent with respect to the care which she exercised for her own safety, and that such negligence was causal. Therefore, the trial court properly included the attacked questions in the verdict.

### The Voir Dire Examination.

Before conducting the *voir dire* examination of the jury panel, counsel were informed that the trial judge would first propound questions to the entire panel, after which they would be permitted to question the panel or the individual jurors on matters not covered by the judge's questions. Apparently under this procedure it is the accepted practice for counsel to designate in advance any questions they desired to have the court ask the panel. A preliminary conference was held between the court and counsel without the hearing of the jury with respect to such questions. In this conference, plaintiffs' counsel requested that the jurors be questioned, in the court's *voir dire* examination of the jurors, as to whether any jurors were stockholders, officers, agents, employees, or otherwise interested in the Western Casualty & Surety Company. This company apparently had issued a public-liability insurance policy to defendant which was in effect at the time of the accident.

Counsel for defendant strenuously objected to any questions disclosing the existence of insurance without a good-faith showing by plaintiffs' counsel that he had reason to believe there were jurors on the panel so interested. The court then inquired whether plaintiffs' counsel had any basis for such an inquiry. Plaintiffs' counsel responded: "Well, I have this basis: Out of a panel of 18 people I think it is likely that one or more would be insured in this company or interested in it in some way." He also

advanced as a further reason that it might develop in the trial that the insurance company was interested in the action, or that a certain Eau Claire insurance agency had made an investigation of the accident. Defendant's counsel assured the court that he would not call as a witness anybody who had made the investigation.

The trial court made it plain that he entertained doubt whether, upon the showing made, any questions should be put to the jury about insurance. This interchange took place between the court and plaintiffs' counsel:

"The Court: Well, you're asking, Mr. Sigl, that the court make this inquiry?

"Mr. Sigl: That is correct, Your Honor.

"The Court: And if the court makes such inquiry and there happens to be error because of this inquiry, you will be ready to take the consequences of this error in review in the supreme court?

"Mr. Sigl: I certainly will."

Defendant's counsel stated that, if the panel were queried by the court about insurance, he wished the record to show that he had moved for a mistrial based upon such inquiry.

Upon the *voir dire* examination the following took place:

"The Court: [Are there] any of you who have been members of associations or companies that investigate claims or settle or adjust such matters or of any casualty or insurance company that would be interested in such matters? (There was no response from jurors.) Are any of you interested as a stockholder or officer of the Western Casualty & Surety Company? (There was no response from jurors.)"

A review of the past decisions of this court, which possess some materiality on the issue of the propriety of bringing out the existence of insurance coverage in the *voir dire* examination, discloses considerable inconsistency. The early cases of *Faber v. C. Reiss Coal Co.* (1905), 124 Wis. 554,

102 N. W. 1049, *Howard v. Beldenville Lumber Co.* (1906), 129 Wis. 98, 108 N. W. 48, and *Lozon v. Leamon Bakery Co.* (1925), 186 Wis. 84, 202 N. W. 296, hold that it is proper to question jurors on the *voir dire* as to whether they are interested in a particular insurance company, if such company is actually financially interested in the outcome of the case. *Dixon v. Russell* (1914), 156 Wis. 161, 145 N. W. 761, determined that such questioning would be improper if there is no claim that an insurance company, whose name is mentioned in the questioning, has a financial interest in the result of the action.

A later case, *Walker v. Pomush* (1931), 206 Wis. 45, 238 N. W. 859, indicates an intention of the court to restrict the rule, that it is proper on *voir dire* examination to ask jurors if they are shareholders in a particular insurance company that is claimed to be financially interested in the outcome of the litigation, to situations where counsel asking the questions acts in *good faith* and has *good reason* to suspect or believe that a member of the panel does have stock in such insurance company. In *Beijer v. Beijer* (1960), 11 Wis. (2d) 207, 210, 105 N. W. (2d) 348, this court held that defendant's counsel had waived his right to question on appeal the trial court's error on the *voir dire* examination of inquiring whether any juror was a policyholder, officer, agent, or employee of a particular insurance company which had issued a policy of liability insurance to the defendant, without a *good-faith* showing by plaintiff's counsel that he had reason to suspect or believe that any of the jurors had such an interest. The waiver consisted of not voicing any objection to the putting of the question and not moving for a mistrial. Implicit in this decision was the holding that the trial court had committed error in putting the insurance question to the jury panel without the required showing of *good faith*.

In the instant case we deem the attempted showing of good faith by plaintiffs' counsel to be wholly inadequate

to support the submission of the insurance question. Western Casualty & Surety Company is not a mutual insurance company, and thus its policies are nonassessable. This would in itself rule out the inquiry as to whether any juror was insured by such company. Furthermore, without the name of the insurance company being disclosed to the jury at the trial, it is highly unlikely that any juror who is a shareholder would know that he had any interest in the case. We know of no practice of insurance companies to notify shareholders of the facts pertaining to particular pending claims or actions. Moreover, a simple inquiry of the panel as to whether they had heard anything about the pending suit prior to the questioning on *voir dire,* and following this by further questions as to the source of such information if the first question brought an affirmative response, would ascertain whether a shareholder-juror had been notified of the particular pending case by the insurance company.

The annual reports of all domestic and licensed foreign insurance companies are available in the office of the commissioner of insurance. These reports disclose the names of the officers and directors of each licensed company. The statutory basis for requiring such reports is found in secs. 200.03 (2) and 200.04, Stats. Western Casualty & Surety Company is incorporated under the laws of Kansas and its annual reports are on file in the office of the commissioner. Attorneys, as well as citizens of the state generally, are entitled to ascertain the names of current insurance company officers and directors from the office of the commissioner. Therefore, plaintiffs' counsel could easily have investigated to ascertain whether any prospective juror was an officer or director of Western Casualty.

There still remains the possibility that there might be employees or agents of the insurance company on the jury panel. Unlike shareholders, an employee or agent would

probably know of the involvement of his company in the pending case. However, preliminary questions put to jurors about their vocations should determine whether further interrogation with respect to the issue of insurance would be necessary.

In addition to voicing a general suspicion that there might be "an insured in this company or interested in it in some way," plaintiffs' counsel also stated that counsel for defendant during the trial might bring out that Western Casualty & Surety Company, or its Eau Claire agency, was interested in the case. Counsel for defendant assured the court that he would not do so and would call no one from either the company or the agency as a witness. In referring to this assurance, plaintiffs' brief states: "While it was true that counsel for the defendant stated he did not plan to call any employees of the company, this would not prevent him from doing so and thus would not afford protection to the plaintiffs." We disagree with this quoted argument. The assurance by defendant's counsel was a binding stipulation of record in the case. If he had attempted to violate it by calling an employee or agent of the insurance company as a witness, it would have been the duty of the trial court to enforce the stipulation by refusing to permit the employee to testify.

A situation might arise, in connection with the *voir dire* examination, where a good-faith showing is made that an interested insurance company has investigated the accident and taken signed statements from witnesses. Whether in such a case, in the absence of any disclaimer by counsel for the company of intended use of such statements at the trial, the trial court should propound a question to the panel inquiring about their interest in, or connection with, this insurance company, would lie within the sound discretion of the court.

The instant case is to be distinguished from a situation, such as was present in *Vuchetich v. General Casualty Co.* (1955), 270 Wis. 552, 72 N. W. (2d) 389, where an insurance company is a party defendant at time of trial. It would be extremely naive to assume that some members of a jury panel in such a case would not have seen a court calendar for the term, or in some other manner learned prior to the *voir dire* examination that an insurance company was a party and, therefore, interested in the outcome of the case. In such a situation, it would be proper on the *voir dire* of the entire panel to propound a question of the nature propounded by the trial court in this case, and to follow it by further questioning of individual jurors if the original question brought an affirmative response.

Plaintiffs contend that, even if we find the *voir dire* examination here to have been in error, we should hold it to be nonprejudicial. Past decisions of this court have recognized that possible prejudice may result from improperly bringing the existence of insurance to the attention of the jury. *Walker v. Pomush, supra,* page 51, and *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 418, 291 N. W. 313. Thus, whether the instant judgment should be reversed is dependent upon whether we reach the conclusion, after examination of the record, that substantial rights of the defendant were affected by this error. Sec. 274.37, Stats. This test was set forth in *Holtz v. Fogarty* (1955), 270 Wis. 647, 650, 72 N. W. (2d) 411, as follows:

"Errors committed in the course of a trial will not operate to disturb a judgment on appeal unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining. *Union Bank v. Commercial Securities Co.* 163 Wis. 470, 157 N. W. 510; *Widness v. Central States Fire Ins. Co.* 259 Wis. 159, 47 N. W. (2d) 879."

Our review of the instant record does not convince us that the jury would probably have answered the negligence question any differently if the error had not occurred. However, we are of the opinion that the error, in conveying to the jury the existence of insurance coverage, probably increased the amount of damages awarded for Mrs. Filipiak's personal injuries and for the loss to Mr. Filipiak of his wife's society and services. Therefore, we determine that the error was prejudicial, and that a new trial will be required. Such new trial is directed as to all issues.

We approve the procedure followed by the trial court in conducting the *voir dire* examination. This procedure is for the court to propound the questions quite generally asked of jurors in most jury trials. Under this procedure, counsel are confined to later propounding only those questions to individual jurors which cover matters not included in the questions put by the court. We deem that this greatly shortens the time required in picking a jury over that required where the court leaves the questioning entirely to counsel, but at the same time adequately protects the interests of the parties. We especially commend the step here followed of holding a preliminary conference between the court and counsel, without the hearing of the jury, for the purpose of permitting counsel to request that particular questions be propounded to the jury and permitting opposing counsel to enter objections thereto. If any requested questions are denied, or if objections are entered to questions the court proposes to ask the panel, the reporter should record the same as was done here.

### Taxation of Costs.

The reporter's transcript of testimony and proceedings had at the trial consists of 485 pages. The brief of the appellant-defendant, including synopsis of argument and index of authorities, consists of 52 pages, plus the attached appendix

of 96 pages. These facts demonstrate that, if defendant were permitted to tax costs in this court, such costs would amount to a considerable sum. In this situation we deem it more equitable that the right of defendant to recover such costs be made dependent upon the outcome of the new trial. If plaintiffs, as a result of the new trial, recover an aggregate judgment not substantially less than the judgment here reversed, then defendant shall have no right to recover its costs on this appeal. However, if the new judgment is substantially less favorable to plaintiffs than the instant one, then the trial court shall provide in the judgment for recovery by defendant of an amount equal to that he would have been entitled to tax as costs in this court if our mandate had so provided.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion. No costs are to be taxed in this court.