KINK and wife, Respondents, v. COMBS, Appellant.

*June 2—June 25, 1965.*

68

For the appellant there were briefs and oral argument by *William L. McCusker* of Madison.

For the respondents there was a brief by *Jack McManus,* attorney, and *Hart, Kraege, Jackman & Wightman* of counsel, all of Madison, and oral argument by *Arnold J. Wightman.*

HEFFERNAN, J. In the opening statement to the jury Mr. McManus, trial counsel for the plaintiffs, stated:

"The testimony will be that . . . Mrs. Kink felt . . . a hard object which she will testify in her opinion was a sexual organ . . . that she was covered with saliva and subsequent-

ly that upon this black dress, which we shall enter into evidence, she will testify that semen stains were ejected upon this dress by Mr. Combs, who had his physical organ exposed."

In fact, however, Mrs. Kink did not testify that the hard object was a sexual organ or that semen stains were ejected upon the dress. The defendant contends that this reference to matters that were not in evidence was highly prejudicial and constitutes grounds for reversal of the verdict. We do not agree. An assertion made in an opening statement or in closing argument need not be founded upon direct evidence, provided that the facts so asserted may be inferred from the evidence.[1] *Horgen v. Chaseburg State Bank* (1938), 227 Wis. 510, 515, 279 N. W. 33; and *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. (2d) 604, 607, 106 N. W. (2d) 274.

"A statement as to matter that may fairly be inferred from the evidence is not within the condemnation of the rule." 3 Am. Jur., Appeal and Error, p. 614, sec. 1073.

Our court has long recognized the necessity for a reasonable latitude in oral argument even after the evidence is in. *Rogers v. Rosenfeld* (1914), 158 Wis. 285, 149 N. W. 33. In the instant case the erroneous statement was made before the first witness was sworn, and cannot be considered as a misrepresentation made after all the facts were known. Certainly the acts which plaintiffs' counsel referred to in his opening statement might reasonably be inferred from the evidence that was presented. In addition to Mrs. Kink's testimony (supra), the cook stated that Mrs. Kink's dress was "terribly messed" and that Mrs. Kink referred to it as being "specked."

The able and experienced trial judge properly analyzed the evidence in a comprehensive written opinion:

---

[1] Generally on this issue see 88 C. J. S., Trial, pp. 311–318, sec. 161; 68 A. L. R. (2d) 999; and 53 Am. Jur., Trial, p. 357, sec. 454.

"In addition to the testimony of Marcella Kink there was testimony of other witnesses, including that of the cook who was in the kitchen nearby at the time of the assault, relative to the nature of the assault, stains on the dress she was wearing at the time, and injury to her leg. Viewing the evidence as a whole and viewing the evidence of Marcella Kink in particular, we are satisfied that there was room for the jury to draw the inference that defendant, in assaulting the plaintiff Marcella Kink, had pressed up against her body with his privates and that there had been an emission against her dress. Upon the other hand, the jury could well have rejected any such inference. It was for the jury to analyze the evidence upon this point and accept or reject the contentions of the respective parties in regard thereto. We regard the matter as within the realm of reasonable inference and not within the realm of guess, speculation, or conjecture. Under the instructions of the court we can presume that, if the jury entertained a doubt, that it would not resort to guess, speculation, and conjecture but would resolve the matter against the plaintiffs. . . . We can not say that counsel for the plaintiffs acted in bad faith or that he made any deliberate misrepresentation or misleading statements with respect to what he fairly expected the evidence to show. We can not assess prejudicial misconduct against him and defendant's motion in this regard must be denied."

Additionally, we would not set aside the trial court's determination in this regard in the absence of a clear abuse of discretion. *Schneck v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. (2d) 649, 659, 128 N. W. (2d) 50; *De Rousseau v. Chicago, St. P., M. & O. R. Co.* (1949), 256 Wis. 19, 39 N. W. (2d) 764. Upon a review of the entire record, it cannot be said that the trial court abused its discretion; rather it properly exercised that discretion on the basis of the evidence presented in the course of trial. Frequently the gauge by which allegedly prejudicial statements are measured is the appropriateness of the verdict. It cannot be said that the damages, though admittedly high, were so

excessive as to reflect passion or prejudice induced by an improper statement. The trial court concluded that upon a review of the evidence, the arguments, and briefs, justice was done.

Furthermore, we cannot conclude that defendant, with full knowledge that the arguments of plaintiffs' counsel in the opening statement are not directly supported by the evidence, can lie back and be heard to complain only after an adverse verdict has been returned. If the defendant had been prejudiced, the fact that the evidence was not probative of plaintiffs' counsel's remarks was known to him at the close of plaintiffs' case. By failing to move for a mistrial at that time defendant waived his right to assert prejudice later. Under analogous situations we have held that counsel claiming prejudice by reason of counsel's misconduct must promptly make proper objections to the court. See *Basile v. Fath* (1925), 185 Wis. 646, 201 N. W. 247, 202 N. W. 367; *State ex rel. Sarnowski v. Fox* (1963), 19 Wis. (2d) 68, 119 N. W. (2d) 451. In the *Basile Case* it was alleged that during the argument to the jury, matters not before the jury were referred to. We said in that case (p. 651), ". . . counsel having remained silent when he could or should have spoken on such a matter so clearly requiring immediate action by the court, ought not to be permitted after verdict against him to try again."

In the instant case the defendant, if he felt aggrieved, should have moved for mistrial at the close of the plaintiffs' case. See *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. (2d) 592, 605, 123 N. W. (2d) 496.

Failure to make a timely motion can only be construed as an election to rely on the possibility of a favorable jury verdict. In *Frion v. Craig* (1957), 274 Wis. 550, 555, 80 N. W. (2d) 808, where the conduct of a juror was in question, we stated:

"Such course of action is open to the obvious interpretation that he preferred to continue with the trial and take his chances with the outcome rather than move for a mistrial. . . . We consider that counsel thereby waived the issue of possible misconduct of a juror, which waiver precludes him from raising the issue on this appeal."

See also *Wetzler v. Glassner* (1925), 185 Wis. 593, 598, 201 N. W. 740; and *Milwaukee v. Milwaukee Amusement, Inc.* (1964), 22 Wis. (2d) 240, 255, 125 N. W. (2d) 625.

The defendant also claims prejudicial error was committed by admitting in evidence the dress that Mrs. Kink allegedly wore at the time of the attack. Mrs. Kink testified that she wore the dress at the time of the assault and thereafter did not wear it, but put it away in a box. In December she gave the dress to one of her waitresses, who testified that since it did not fit, she did not wear it, but put it on a hanger in her closet. Mrs. Kink was informed that the dress might have some evidentiary value, so she got it back. She then gave the dress to Mr. Elliott, an associate in the office of her trial counsel. Mr. Elliott produced the dress at the trial.[2] The "chain of evidence" is thus complete, and there is no reason to doubt the authenticity of this exhibit. The defendant also objected on the basis that there was no proper identification of the stains on the dress. The plaintiff intro-

[2] Defendant also claims the trial court erred in permitting Attorney J. Philip Elliott, an associate of counsel for plaintiffs, to testify in respect to the custody of the dress. We do not agree. Canon 19 (Canons of Professional & Judicial Ethics, American Bar Association), on which the objection is based, does not proscribe testimony "as to merely formal matters, such as attestation or custody of an instrument and the like." We deem the testimony in this case to be within the exception permitted by the canon, *i.e.,* a mere formal matter, the custody of the dress. In any event, the canon, if applicable, would not affect the admissibility or competency of the testimony. *Estate of Weinert* (1962), 18 Wis. (2d) 33, 36, 117 N. W. (2d) 685. It should also be noted that this was the extent of Mr. Elliott's participation in the trial.

duced testimony that the dress had not been cleaned nor tampered with since the assault. There was evidence that after the dress was given to Mr. Elliott that it was thrown on a chair in his office for several weeks. This technique can hardly be recommended as an ideal way to preserve evidence; however, there was testimony that the dress was in substantially the same condition as it was after the assault. As stated by 1 Conrad, Evidence, p. 622, sec. 734:

"Whether there has been a material change is for the determination of the trial court, which has a wide discretion in the matter."

In this case it was within the discretion of the court to overrule the objection to admission and to leave to the jury the evaluation of the evidence. The able counsel for the defendant enjoyed the right of full cross-examination in respect to the careless handling of the dress and as the trial court said, "fully exploited" his position in respect to the weight of this piece of evidence in his argument to the jury.

The plaintiff failed to produce any scientific evidence to show that the marks on the dress were semen stains. In argument before the jury, the defense attorney properly commented upon this failure of proof. However, when the plaintiffs' counsel wished to argue the point and to explain this failure, he was admonished by the trial judge, who thereupon instructed the jury that *neither* counsel could comment on any evidence not produced. The learned judge was in error in this respect. It is the accepted rule of law that when a party has failed to produce evidence in his possession, that in the due course of the case would normally be introduced, the adverse party may comment upon the fact that there is an inference that the nonproduced evidence would have been unfavorable.

In this case defense counsel did have opportunity to comment and argue upon the plaintiffs' failure to produce scientific evidence that the marks were semen stains.

The court in instructing the jury acknowledged its previous error and made it clear to the jury that it was proper for defense counsel to point to the inference that arises against the party who fails to produce evidence that is within his control.

The following is the court's instruction:

"Now, members of the jury, in the course of his argument to you Mr. McCusker made reference to the non-production of certain testimony by Mr. McManus relative to analysis of the stains on the dress. Now, under our law where a party has control of certain evidence, in this case the dress, it is the rule that the failure to produce evidence which might have to do with analysis of the dress and its contents can lead to an inference against the party who does not produce such evidence; and it was proper for Mr. McCusker in his argument to comment on that; and the Court was wrong in its instructions to you in stating that Mr. McCusker was not entitled to so comment."

Defendant's requested instruction is:

". . . The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause.

"It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him."

We see no substantial difference between the instructions. The effect of each instruction is to inform the jury that the plaintiffs' failure to produce the evidence could be commented

upon by the opposing counsel, and that the jury in reaching a verdict could give consideration to an inference unfavorable to the plaintiffs as the result of the nonproduction of scientific evidence in regard to the nature of the stains.

While the proposed defendant's instruction is correct, it is difficult to see that the one used is less favorable to him. In any event no trial court is obliged to mouth a magic formula and fail to do so at its peril. It is the feeling of this court that it is the better practice to tailor an instruction to the facts at hand in a manner that is most meaningful under the circumstances. The instruction used embodied the substance of the rule of law, properly related it to the facts, and that is all that is necessary. *Simon v. Van de Hey* (1955), 269 Wis. 50, 68 N. W. (2d) 529; *Herlitzke v. La Crosse Inter-Urban Telephone Co.* (1911), 145 Wis. 185, 130 N. W. 59.

Nor can we agree with defendant's contention that the trial court erred in refusing an instruction on the plaintiff's failure to make a timely outcry. The requested instruction would require that a female who is sexually assaulted cry out and complain of the wrong done her at the first reasonable opportunity, and failure to do so under some circumstances is evidence that tends to discredit the veracity of the complaint.[3] Under some fact situations the requested instruction would be proper. However, we believe that the trial court ruled correctly in concluding that giving such an instruction would have amounted to undue comment on one phase of the evidence. The facts of this case do not warrant the use of the demanded instruction. The assault took place without warning. The testimony revealed that Combs covered the victim's mouth. She testified that she could not cry out at the actual time of the attack. Moreover, the moment she broke loose, she cried out to Peggy Kink (who saw the

[3] Anno. 6 A. L. R. 985, 1018, Civil action for assault upon female person; 75 C. J. S., Rape, p. 583, sec. 82.

assault and did not need to be told of it), "Call Martin quick." It would appear that the requested instruction would therefore be most inappropriate. The refusal to give the requested instruction was well within the discretion of the trial judge.

Defendant also complains that the trial judge improperly included an instruction on the aggravation of a pre-existing condition. However, there was some evidence of pre-existing ailments of the nature complained of after the incident. Mrs. Kink, as the result of questioning by counsel for the defendant, stated that she did have a duodenal ulcer some years before. There was also evidence that could lead the jury to conclude that Mrs. Kink suffered certain phobic reactions prior to the incident. This instruction was obviously intended to prevent compensation for conditions not caused or aggravated by the incident of April 21st. The instruction was well qualified with such phrases as "disability which the plaintiff may have had"—"damages to the extent of such increase, if any."

The following paragraph from the disputed instruction makes it clear that the trial judge was neither assuming a pre-existing condition nor an aggravation of that condition.

"If you find that the plaintiff Marcella Kink had a pre-existing illness or condition which was dormant before the incident in question, but that such illness or condition was aggravated or brought into activity as a natural result of the incident in question, then you should include an amount which will fairly and reasonably compensate the plaintiff Marcella Kink for such damages as she suffered as a result of such aggravation or activation of her condition."

The failure to give this instruction would have been highly prejudicial to the defendant.

Defendant relies also on a letter and affidavit of one of the jurors filed with the trial court after the verdict. Therein the juror stated:

"I could not hold out for my opinion that punitive damages were not warranted from sheer fatigue and I feel that I have failed to render a true verdict in this case."

This is an attempt of a juror to impeach his own verdict,[4] and is not countenanced by this court. Only in limited cases, *e.g.,* if a verdict is reported erroneously by clerical error, will jurors be heard to complain that the verdict is in error. *Brophy v. Milwaukee Electric Railway & Transport Co.* (1947), 251 Wis. 558, 30 N. W. (2d) 76.

*Olson v. Williams* (1955), 270 Wis. 57, 70 N. W. (2d) 10, and a series of Wisconsin cases that precedes it point out the sound reasons of public policy behind this rule. Suffice it to say that if a showing that a juror was fatigued when he arrived at a verdict would result in setting it aside, the finality that we now confidently expect from a jury verdict would be at an end, and the jurors themselves would be harassed endlessly by the loser in his efforts to set aside their decision.

Appellant claims that the jury finding of $5,000 compensatory damages is excessive and should be set aside. Viewing the whole of the evidence in the case and in a light most favorable to the plaintiff, the learned trial court concluded that the award was not excessive. The trial court having heard all the evidence and seen the witnesses is peculiarly able to make a proper determination in this respect. It is not within our power as an appellate court to set aside a verdict as excessive unless it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or rules of law. *Sennott v. Seeber* (1959), 6 Wis. (2d) 590, 594, 95 N. W. (2d) 269, *Bethke v. Duwe* (1950), 256 Wis. 378, 384, 41 N. W. (2d) 277. This we cannot say. The award of damages is, in the absence of the factors mentioned above, in the discretion of the jury.

---

[4] Generally, see 66 C. J. S., New Trial, p. 413, sec. 169 (b).

It is obvious from a reading of the record that an assault took place. There is evidence that the plaintiff was bruised, that she was mentally upset, that the incident caused her to "see the face of Combs" when other men were near her, and that she was unable to have sexual relations with her husband after the attack. Medical testimony corroborated some of the symptoms of the plaintiff following the attack. One of the medical experts testified that the assault had induced or aggravated a phobic reaction, and that this phobia would always remain a factor involving her relations with men.

There is undeniably conflicting evidence in regard to the injuries sustained, but the jury is the judge of the credibility of the witnesses, and their verdict will not be set aside merely because the damages are high. As the trial judge stated:

". . . we are satisfied that the award of $5000 in compensatory damages to the plaintiff Marcella Kink is supported by the evidence. It is not perverse and it is not excessive."

The defendant claims that the question of punitive or exemplary damages should not have been submitted to the jury because defendant's acts were not activated by malice or vindictiveness. However, malice or vindictiveness are not the *sine qua non* of punitive damages.

"Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action 'punitive' or 'exemplary' damages, or what is sometimes called 'smart money.'" Prosser, Law of Torts (2d ed.), p. 9, sec. 2.

For the award of punitive damages it is sufficient that there be a showing of wanton, wilful, or reckless disregard of the plaintiff's rights. 6 C. J. S., Assault and Battery, p. 904, sec. 55 b (3). Punitive damages are particularly appropriate where the defendant sexually assaults his victim.

Defendant urges this court abandon the practice of permitting punitive damages. He argues that the plaintiff under the present doctrine inequitably receives compensation in excess of his actual damages, that the principle of deterrence is a function of the criminal, not civil, law, and in any event the award of exemplary damages is not in fact a deterrent.

We have recently reaffirmed our adherence to the rule of punitive damages [5] and we see no reason to alter that position in this case, where it appears they are eminently justified.

Suffice it to say that whatever shortcomings the award of punitive damages may have, nevertheless, it must be remembered that it has the effect of bringing to punishment types of conduct that though oppressive and hurtful to the individual almost invariably go unpunished by the public prosecutor. Under the law of Wisconsin (sec. 59.47 (2), Stats.), a district attorney is not obliged to prosecute an assault and battery and may leave the injured party to prosecute through his own attorney. Certainly, the criminal law seldom reaches an assault and battery case. By allowing punitive damages the self-interest of the plaintiff will lead to prosecution of the claim, while the same self-interest of the plaintiff would lead him to refrain from instituting a criminal action at his own expense. Punitive damages serve not only the aggrieved victim of an assault, but also society, for by this device, a quasi-criminal action is prosecuted, when ordinarily it would not be prosecuted at all. The multiple-damage suits countenanced by our statutes recognize the principle that certain types of violations will not be prosecuted unless the injured parties' judgment is fattened by the equivalent of punitive damages. These are civil actions (*e.g.,* antitrust suits) where the public interest is served by the incentive given to private litigation. Certainly the consolidation of claims for com-

[5] *Fuchs v. Kupper* (1963), 22 Wis. (2d) 107, 111, 125 N. W. (2d) 360.

pensation and punitive damages in one cause of action is in accord with modern principles of avoiding multiple trials.

This court takes the position that punitive damages do serve as a deterrent. As we said recently in *Malco v. Midwest Aluminum Sales* (1961), 14 Wis. (2d) 57, 66, 109 N. W. (2d) 516:

> "Punitive damage is given on the basis of punishment . . . to deter others from like conduct."

Referring to punitive damages, this court many years ago said:

> "It tends to elevate the jury as a responsible instrument of government, discourages private reprisals, restrains the strong, influential, and unscrupulous, vindicates the right of the weak, and encourages recourse to and confidence in the courts of law by those wronged or oppressed by acts or practices not cognizable in or not sufficiently punished by the criminal law. The latter law must be uniform as to persons and acts, must fix a maximum and minimum punishment on this basis, and cannot always be adjusted to particular circumstances of atrocity which occasionally occur." *Luther v. Shaw* (1914), 157 Wis. 234, 238, 147 N. W. 18.

Certainly the award of these damages should deter similar conduct on the part of this defendant.

Nor can we agree that the punitive damages awarded are so excessive as to shock the conscience of the court.

> "It is usually held that the amount of exemplary damages lies within the discretion of the jury, subject to review by the court only in cases of such abuse as indicates the influence of passion or prejudice." McCormick, Damages (hornbook series), p. 296, sec. 85.

The punitive damages herein are substantial. However, these damages are properly denominated "smart money," and as we said in the *Malco Case, supra:*

"Punitive damage is given on the basis of punishment. . . . Punitive damage ought to serve its purpose."

The evidence herein justified a judgment in an amount sufficient to punish the wrongdoer for his wanton conduct, to deter him from a repetition of it, and to deter others who may be similarly tempted. It would appear that this has been accomplished.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.