JACOBSON, Administrator *de bonis non* w. w. a., Plaintiff, v. GREYHOUND CORPORATION, Defendant and Appellant: KNIGHT and another, Defendants: CLARK COUNTY and another, Interpleaded Defendants and Respondents.

ALLEN, Plaintiff, v. SAME, Defendant and Appellant: SAME, Defendants: SAME, Interpleaded Defendants and Respondents.

*November 1—November 30, 1965.*

58

For the appellant there was a brief by *Herrick & Sigl* of Eau Claire, and oral argument by *Duane Herrick*.

For the respondents there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Francis J. Wilcox*.

BEILFUSS, J. Two issues are raised upon this appeal— (1) was it error to exclude the expert testimony, and (2) was it error to grant the motion for a directed verdict?

Greyhound called two county highway commissioners to give expert opinion testimony as to the proper manner of plowing snow and as to whether Lyons, the driver of the Clark county snowplow, operated the vehicle at an excessive speed. The two county highway commissioners were John E. Smith from Eau Claire county, and Stewart O'Flanigan from Dunn county. While testimony of the two witnesses is not identical, it is essentially so; for this reason the opinion will refer only to the testimony of Mr. Smith.

Mr. Smith had been a county highway commissioner for six years and employed in the general field of highway work for a period of thirty-nine years. He supervised highway maintenance work, including snowplowing. He attended meetings of state highway personnel where the subject of snowplowing was discussed. He testified, however, that there were no written codes or standards as to proper or improper methods of snowplowing, excepting that snowplows should not be operated "against traffic."

A hypothetical question setting forth substantially the same facts as reported above was put to Mr. Smith preliminary to asking him if he had an opinion as to the proper speed for a snowplow under those circumstances. (The hypothetical question fixed the speed of the snowplow at 20 to 25 miles per hour.)

An objection to the question was sustained by the trial court as follows: "I am merely ruling that the question in the form that it is in and so forth does not make a proper case for an expert opinion; that it is invading the province of the jury. I am ruling on this one particular question and am not saying anything as to any other testimony you may or may not wish to offer."

Counsel for Greyhound pursued the subject and sought Smith's opinion as to the effect speed would have upon the amount of snow blown and as to the safe methods of plowing under these circumstances. Cross-examination as to proper foundation was permitted and Smith admitted that the depth of the snow and the size and height of the blade "would make a difference." The hypothetical question did not contain this information and objection that insufficient foundation had been laid for an opinion was sustained. Smith was permitted to testify the faster you plow snow the higher it will be thrown in a strong wind and that it would impair visibility in the immediate area for other traffic.

In reconsidering the ruling on the expert testimony upon motions after verdict, the trial court stated:

". . . An attempt was made to introduce expert testimony as to the safe manner of plowing snow but the Court rejected it. The Court felt and still feels that such testimony would invade the province of the jury. The two expert witnesses stated that there were no general rules promulgated by the State or any agency on the subject, except that no plow should plow against traffic. They testified that when the County Highway Commissioners would meet they would discuss plowing snow but there was no testimony that the group ever formulated or agreed to any standards or rules as to plowing

snow. It is a matter of common knowledge that the faster a plow travels the more snow will be raised in the air and expert testimony is not needed to establish this. No proper foundation was laid for expert opinions. No testimony was offered as to the size or extent of the drifts being plowed, or as to the length, width or depth of the drifts or as to whether the snow was packed and heavy or was light. With snow that is deep and heavy a plow would obviously have to move and operate differently than with a very light snow. . . ."

Counsel for Greyhound in its brief and at oral argument states that he assumed the trial court sustained the objection to the opinions of Smith upon the ground that it invaded the province of the jury. The rulings of the trial court do reveal that the trial court did rely, in part, upon this ground. It is apparent the trial court also ruled that the hypothetical question as given "did not make a proper case for expert opinion" and that no proper foundation had been laid.

Assuming that Mr. Smith and Mr. O'Flanigan were qualified as experts in a field beyond the common knowledge of jurors, an objection upon the sole ground that their opinions invade that province of the jury should not be sustained.

The recent case of *Chapnitsky v. McClone* (1963), 20 Wis. (2d) 453, 122 N. W. (2d) 400, dealt with this same problem. At pages 462, 463, we stated:

"Defendants' counsel objected to both questions on the ground that they invaded the province of the jury. The trial court sustained the objections to both questions. Plaintiff contends this ruling constituted prejudicial error. The questions were not objectionable on that ground. This same issue was recently before us in *Fehrman v. Smirl*, ante, pp. 1, 18, 121 N. W. (2d) 255, and we therein stated:

" 'It is urged that these questions and answers were incompetent because they invaded the province of the jury. This court, however, is committed to the principle that expert opinion testimony is not objectionable merely because it covers one of the ultimate facts to be determined by the jury. *Kreyer v. Farmers' Co-operative Lum-*

*ber Co.* (1962), 18 Wis. (2d) 67, 76, 117 N. W. (2d) 646; *Zarnik v. C. Reiss Coal Co.* (1907), 133 Wis. 290, 301, 113 N. W. 752; and *Daly v. Milwaukee* (1899), 103 Wis. 588, 590, 79 N. W. 752. See also 7 Wigmore, Evidence (3d ed.), p. 18, sec. 1921.' "

*Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 75, 117 N. W. (2d) 646, sets forth:

"Trial courts have wide discretion as to admitting opinion evidence of expert witnesses. *Anderson v. Eggert* (1940), 234 Wis. 348, 291 N. W. 365; *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759.

"The principal rule on whether or not expert opinion evidence should be received is stated in the *Anderson Case, supra,* where the court held, at page 361:

" 'Whether the testimony was properly received in this case depends upon whether members of the jury having that knowledge and general experience common to every member of the community would be aided in a consideration of the issues by the testimony offered and received.' "

In accord with the rule of *Anderson, supra,* for the admission of opinion evidence, are the tests adopted in McCormick, Evidence (hornbook series), pp. 28, 29, sec. 13:

"First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."

In the case at hand it does not appear that any written rules or directions had been adopted (other than not to plow "against traffic") or that the highway commissioners had agreed upon any specific snowplowing procedures so as to make it a field of special knowledge over and above that possessed by the average juror.[2] This, coupled with the fact that the hypothetical question did not include significant factors such as depth of the

---

[2] *Gospodar v. Milwaukee Automobile Ins. Co.* (1946), 249 Wis. 332, 24 N. W. (2d) 676, 25 N. W. (2d) 257.

snow and size and height of the snowplow blade as necessary foundation, was sufficient to permit the trial court to exclude the opinion evidence as a proper exercise of its discretion.

In ruling on a motion for a directed verdict the trial court must view the evidence in the light most favorable to the party moved against and apply the following rule:

> " 'A verdict may properly be directed only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405; *Thoni v. Bancroft Dairy Co.* (1949), 255 Wis. 577, 579, 39 N. W. (2d) 690; *Wadoz v. United Nat. Indemnity Co.* (1957), 274 Wis. 383, 390, 80 N. W. (2d) 262." *Bruno v. Golden Bell Dairy* (1961), 15 Wis. (2d) 106, 109, 112 N. W. (2d) 199.

Both parties concede that it was not negligence to plow snow because of the hazardous weather conditions. This work was being done in response to the county's duty to maintain the highway. The county was attempting to remove or alleviate a road condition that could be dangerous to the users of the highway.

The county does not contend that it could not be liable under any circumstances nor that the snowplow driver could not have been negligent regardless of how he drove the vehicle. It claims only that its driver was not negligent under the facts in evidence.

Without repeating the facts in detail, it is undisputed that the hazardous weather conditions were known to all three drivers; that both Knight, the car driver, and Weiss, the bus driver, saw the snowplow at a considerable distance (at least one-quarter mile) before they reached the snowplow; that they saw the flashing blue maintenance light and knew it was a snowplow and saw snow blow across the road when it hit the finger drifts.

Greyhound contends that there is sufficient evidence to permit a finding that Lyons, the snowplow driver, was negligent as to lookout and as to speed.

Viewing the evidence most favorable to Greyhound, it appears that Lyons had been plowing finger drifts in this area on Highway 12 for two or three hours; that he knew that snow blew across the road when he hit the drifts; that his vehicle was equipped with necessary clearance and flashing blue maintenance vehicle lights and that they were working; that he was traveling at 20 miles per hour (as observed by the trial court, Knight's testimony that Lyons' speed was 25 miles per hour has very little probative value because he was meeting Lyons in the same line of travel) ; that the snowplow was entirely on the right hand shoulder except for the left wheels; and that he did not see, in fact could not see, the bus approaching from the rear because his rearview mirrors were covered with snow.

Aside from the fact that it was impractical to clean the mirrors under the conditions that existed, a driver ordinarily has no duty of maintaining a lookout to the rear unless a deviation from his course of travel or his position on the highway could reasonably create or constitute a hazard to drivers approaching from the rear.[3] While he knew or should have known that his activity was causing snow to blow across the highway in such a manner as to momentarily restrict the vision of other users of the highway under the conditions as they existed here, he could assume that fact was readily apparent to the other users of the highway. To say that he was required to stop before plowing each drift on the busy state highway would be such an unreasonable restriction as to practically prevent any efficient snowplowing.

In the absence of testimony as to the length, width, or depth of the drifts, or the size or height of the plow blade, coupled with his position on the highway, it would

[3] *Scott v. Gilbertson* (1957), 2 Wis. (2d) 102, 85 N. W. (2d) 852.

be only speculation to find that a speed of 20 miles per hour would appreciably affect the blowing snow hazard, or that his speed was negligence.

Greyhound argues that Lyons violated the instructions of his superiors as to how to plow snow in a high wind. The evidence does not bear out this contention.

We agree with the trial court that there is no evidence to sustain a finding of negligence on the part of Lyons, and approve the order granting the motion for a directed verdict.

*By the Court.*—Judgments affirmed.