LEMBERGER, Appellant, v. KOEHRING COMPANY, Respondent.*

*No. 207. Argued March 4, 1974.—Decided April 12, 1974.*
(Also reported in 216 N. W. 2d 542.)

* Motion for rehearing denied, without costs, on June 4, 1974.

For the appellant there were briefs by *Kersten & McKinnon* of Milwaukee, attorneys, and *Charles D. Clausen* and *George P. Kersten* of Milwaukee, and *Dudley O. Emmert* of Manitowoc, of counsel, and oral argument by *George P. Kersten*.

For the respondent there was a brief by *Frisch, Dudek, Slattery & Denny*, attorneys, and *Robert A. Slattery* and *Thomas J. Arenz* of counsel, all of Milwaukee, and oral argument by *Robert A. Slattery*.

HEFFERNAN, J. The defendant Koehring, in urging that the judgment be sustained, argues that there is no evidence that the wear block struck Lemberger. It is true that no one could testify that they saw the 16 pound piece of maple actually strike him. However, the evidence is sufficient to show that Lemberger was struck by this piece of wood. The construction foreman stated that, immediately after Lemberger's injury, the wear block was lying nearby and there was nothing else that could

have struck him. The crane operator said that just before the accident happened he saw something fall in front of him that was just a blur. When he looked down a moment later, he saw the wear block lying on the ground close to Lemberger. There is no evidence to show that the wear block was not on the boom immediately prior to the accident, and immediately after the accident it is undisputed that it was on the ground next to Lemberger. No reasonable argument can be made that it was not the wear block that caused the injury to Lemberger.

The Koehring Company also argues that the dismissal of the complaint was correct on the grounds that the injury was caused by the failure of the plaintiff to wear a protective head covering. It is undisputed that, just prior to the accident, Lemberger was not wearing a protective hard hat, but there was evidence to show that no other employee on the site was wearing a hard hat. There was a plethora of testimony that tended to show that it was not considered necessary, nor was it the ordinary practice for construction workers to wear a hard hat when only the crane itself was in operation and it was not being used to transport or lift a load of material. In the instant case, only the crane boom itself was overhead. No load was being moved.

The basic argument of Koehring is that, even though the injury were caused by the falling maple block, a hard hat would have prevented any serious injury and that, therefore, the failure to wear the protective head covering was the causal negligence that resulted in the type of injury that occurred. Koehring submitted the testimony of two expert witnesses. One was Robert W. Webster, a retired civilian navy engineer, who spent four years developing specifications for a protective head covering to be used by government employees. The hard hat that was available to Lemberger on the job was designed in accordance with the specifications developed by Webster.

Lemberger attempted to exclude Webster's testimony prior to trial on the ground that it was only speculative. Despite objection, Webster's testimony was permitted at trial.

Webster's position that the hard hat would have prevented the injury was premised on an effect-to-cause syllogism. From the information available to Webster, he knew that the blow to Lemberger's skull caused a depression one-half to three-quarters of an inch in depth to the right of the center of the head and having dimensions of 1½ inches by 2½ inches. From the nature of the injury, Webster concluded that the force that struck Lemberger's head was relatively light, probably not exceeding 100 foot pounds, and that this force was within the protective capacities of the hat. He relied on his own experience, and on literature on the subject which showed the capacity of the hard hat to withstand impact and the nature of skull injuries that are occasioned by impacts of varying forces.

Webster admitted in the course of cross-examination that he would have to assume some facts that were not completely clear in the circumstances. He admitted that he would have to speculate whether it was a bolt or a metal projection that hit Lemberger, and whether Lemberger was struck by a corner of the block. He also admitted that it would make a difference whether Lemberger's head was upright or at an angle when hit. He admitted that he did not take into consideration the speed and weight of the object that struck Lemberger. Despite these admitted lacunae in the formulation of Webster's opinion, there is, however, evidence to show that he was an eminent authority on the question of the protective capacity of the particular hat. The record is somewhat less convincing that he had any expertise that qualified him to testify with respect to a force that would produce a particular kind of injury to an unprotected head. He nevertheless had some experience in that re-

spect. There is no reason why a properly qualified expert, relying on the physical injury, cannot form an opinion of the force required to produce the injury.

The basic question in determining the qualifications of an expert is whether his opinion, based on his experience and knowledge, will assist the jury in arriving at a conclusion. Webster had that knowledge and experience, and it was within the discretion of the trial judge to accept him as an expert. Webster reached his conclusion on a reasonable and logical basis. We have in a series of cases approved the hindsight opinions of accident-reconstruction experts who formulate their opinions on the basis of facts that have been known only in part and upon the physical circumstances after the accident.

In *Rabata v. Dohner* (1969), 45 Wis. 2d 111, 172 N. W. 2d 409, we upheld a trial judge's discretion to permit a witness to give an opinion based upon the position of debris on the highway after the accident. The fact that the opinion of Webster was formed on the basis of the facts as revealed after the accident in no way affects its admissibility.

The credibility of Webster's testimony, of course, is another matter. However, Webster was extensively and thoroughly cross-examined. The premises upon which he based his opinion were revealed, and on several occasions questions skillfully asked by counsel indicated gaps in the logical structure of Webster's hypothesis.

The credibility of Webster was for the jury. His testimony was not so speculative that its admission constituted an abuse of discretion. Whatever weaknesses it had were thoroughly explored by opposing counsel's examination.

On the other hand, we see no basis for the admission of Dr. Millen's deposed testimony. Dr. Millen is a neurologist, who specializes in psychology and the physical disorders of the nervous system. He may well be an expert on personal injuries, and it was agreed that he had some knowledge of the basic laws of physics involv-

ing the forces asserted by falling objects. He was permitted, however, to express the opinion that, had Lemberger been wearing a hard hat, serious injury would have been prevented. That opinion was not within the field of Dr. Millen's expertise. The only knowledge he had in that field was the very meager information that he had gleaned from the fact that his father-in-law ran a construction company, that his son had worked for that construction company, and that hard hats were used in the work. He had no expertise or special knowledge on the capacity of a hard hat to withstand impact and to prevent a skull injury. To the extent that Dr. Millen was permitted to testify as an expert on the protective capacity of the hard hat, his opinion was beyond his qualifications and should have been excluded by the trial judge. He did not have " 'such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' " *Jacobson v. Greyhound Corp.* (1965), 29 Wis. 2d 55, 63, 138 N. W. 2d 133.

Under the circumstances of this case, however, the evidence of Dr. Millen was merely cumulative to that given by Webster and did not produce information that would be prejudicial to the plaintiff. It was error to admit Dr. Millen's hard-hat testimony, but that error was not prejudicial and does in itself not require a reversal of the verdict.

Koehring also argues that there is no evidence of record to sustain the jury's finding that Koehring was negligent. The basic theory of the plaintiff's case was that the crane was negligently designed because of the use of the maple wear block and its mode of attachment to the crane boom. Plaintiff's basic position was that the wooden block was attached to the boom by steel clamps and that, because of the tendency of wood to change shape due to environmental conditions and to shrink as the moisture content of the wood decreased, the frictional

force of the clamps on the wood would also decrease. In addition, plaintiff contends that, when the crane was used for pile driving, the cables whipped at a high velocity and this tended to loosen the contact points at which the steel clamps, the wear block, and the crane boom were united.

From the testimony, we conclude that there is sufficient evidence to support the finding of the jury that the crane was negligently manufactured and designed and that such negligence caused Lemberger's injuries.

Bobby L. Richardson, a professor of mechanical engineering at Marquette University, stated that the clamp device used to make the wooden block and the crane boom was insufficient to provide a secure and uniform holding force, and that, because of the tendency of wood to change its dimensions under different conditions of humidity, there was no certainty that the frictional forces that were in effect at the time the crane was built would remain static during the normal use of the crane and the wear block. The testimony of Professor Richardson is not attacked on this appeal.

Donald F. Livermore, professor of mechanical engineering and chairman of that department at the University of Wisconsin-Madison, also testified that the clamp was defective because of the wood-to-metal connection.

The chief attack of Koehring in its brief on this appeal is upon the opinion of Professor Lee Walter Crandall, a professor of civil engineering at the University of Wisconsin-Madison. He stated that the technique of using a clamp to attach the block to the boom was defective because wood changes its dimensions and shrinks with a reduction of humidity, making it possible for the clamp to lose its effective frictional force on the boom and the block of wood. He said that, if a block of wood 4 inches thick shrinks by $\frac{1}{10}$th of an inch, the effective clamping force would be lost. He gave as his opinion that

the reduction in a moisture content from 30 percent to 20 percent would cause the block to shrink $\frac{1}{8}$th of an inch, and that a moisture content reduction to 6 percent would cause an additional $\frac{1}{8}$th inch shrinkage. This testimony is attacked on the ground that Crandall's opinion was speculative because he did not know the moisture content of the wood block when it was installed and because he further admitted that the moisture content of the block would probably level off at 15 to 19 percent and not at the 6 percent figure that he hypothetically used.

The cross-examination by Koehring's attorneys revealed that some of the figures upon which Professor Crandall relied were indeed speculative and were not supported by the evidence, but they did not successfully attack the basic premise, based on Crandall's expertise and his knowledge of the properties of wood, that the method used by Koehring was not a reasonable way to attach the wear block to the boom of the crane. Whatever deficiencies there might have been in the specifics of Crandall's testimony, his basic premise was supported by the testimony of Professors Richardson and Livermore.

Even more importantly, however, Koehring's own director of manufacturing services, Erwin Brekelbaum, admitted that the wear block fell because of the shrinkage of the wood and the vibration caused by the cables in the ordinary operation of the crane. On the other hand, Brekelbaum testified that the clamp attachment would safely hold the block in position if it were properly maintained.

The entire testimony further indicates that, in view of the method by which the wooden wear block was clamped to the crane boom, a manufacturer in the exercise of ordinary care should have directed attention to the special problems of maintenance that were required.

Yet, the evidence is clear that Koehring failed to warn the crane owners and operators that the bolts used to clamp the wear block to the boom should be periodically tightened. The safety manual issued by the manufacturer merely recommended:

"Keep the machine clean. The process of cleaning is one good way to discover trouble in the making, such as loose bolts, water leaks, oil connections, etc."

Witnesses called by Lemberger showed that crane operators, who are responsible for the maintenance of cranes, would not, in the exercise of ordinary care, check the tightness of the wear-block bolts. Koehring presented evidence which would tend to show that a crane operator, in the exercise of ordinary care, would check the bolts on the wear blocks whether he was specifically warned to do so or not. This presented an issue for the jury to decide.

In any event, there is evidence from which the jury could properly conclude that the method of attaching the wear block to the boom was not safe without constant maintenance and that Koehring was negligent in respect to the manner of attaching the wear block to the boom and could also be inferentially held negligent for failure to warn of a known hazard.

It is thus apparent from the evidence that the jury could find both the plaintiff and defendant negligent.

Lemberger contends that the jury's apportionment of negligence was grossly disproportionate and should be set aside. Koehring argues that the jury could not properly find any negligence upon the defendant and that the judgment dismissing the plaintiff's complaint should be sustained.

Ordinarily, we affirm a jury's apportionment of negligence, and we will upset its finding only in unusual cases. We stated in *Lautenschlager v. Hamburg* (1969),

41 Wis. 2d 623, 628, 165 N. W. 2d 129, that the jury's apportionment of negligence will not be set aside unless at least one of the following factors is present:

"(1) If, as a matter of law, the plaintiff's negligence equaled or exceeded that of the defendant; (2) if the percentages attributed to the parties (in light of the facts) are grossly disproportionate; and (3) if there was such a complete failure of proof that the verdict could only be based upon speculation." [1]

Were we to view this case only on the question of the comparison of negligence, we would find it difficult to sustain the jury's verdict that the negligence of Lemberger in not wearing a hard hat exceeded the negligence of Koehring in manufacturing a crane on whose boom there was negligently clamped a 16 pound block which, if not properly maintained, would fall.

There was substantial evidence which could have justified the jury's conclusion that Lemberger was not negligent at all. There was testimony that a workman under the circumstances of this accident would not consider that due care required the wearing of a protective head cover.

We need not, however, belabor the point that, from the record, the jury's apportionment of negligence was contrary to a reasonable view of the evidence and grossly disproportionate to the facts, for the record shows that the jury was erroneously instructed and its findings of comparative negligence must therefore be set aside.

The trial judge instructed the jury that, under the Wisconsin Administrative Code, Lemberger was required to wear a hard hat when he was at work on July 15, 1966, and that he was negligent if he failed to wear the

---

[1] In view of the 1971 change in sec. 895.045, Stats., which now denies recovery to the plaintiff only when his negligence is greater than the defendant's, the jury's apportionment of negligence will not be set aside under the first of these factors unless, as a matter of law, the plaintiff's negligence exceeds that of the defendant.

necessary protective head covering. Since the evidence was undisputed that Lemberger was not wearing a hard hat, the judge, in effect, instructed the jury to find him negligent as a matter of law. The trial judge told the jury:

"In connection with Question No. 3, you are further instructed that the Wisconsin Administrative Code provides that all workers on tunnel, shaft, trench and caisson projects shall wear protective hats or caps of approved design and manufacture. The construction project here involved is trench and caisson construction within the meaning of the Code. A person who fails to comply with such rule is negligent as that term is used in the verdict and in the Court's instructions."

The portion of the Administrative Code referred to by the trial judge does not warrant that instruction. 3 Wis. Adm. Code, sec. IND 6.05 (3), provides:

"PROTECTIVE HATS. All workers on tunnel, shaft, trench, and caisson projects shall wear protective hats or caps of approved design and manufacture."

Some of the terms used in that regulation are defined in sec. IND 6.02, which provides:

"(1) TUNNEL is a *subterranean* passage or chamber constructed without the removal of a superincumbent material.

"(2) SHAFT is an *excavation* made from the surface of the ground, the longer axis of which is steeper than 45 degrees. Widening of a trench to accommodate a manhole shall be considered a trench.

"(3) TRENCH means a longitudinal *excavation* made from the surface of the ground." (Emphasis supplied.)

We conclude, contrary to the trial judge's instruction, that at the time Lemberger was injured he was involved in neither trench nor caisson construction. It is beyond argument that, at the time of the accident, the employees were not engaged on a trench project. They were working on the surface of a stream bed, and they were

endeavoring to erect a shield, driven into the earth for the purpose of preventing the water from the stream from entering and preventing the proper setting of the concrete that eventually would be poured. The structure on which Lemberger and Engebretson, together with the crane operator, were working was not a caisson, which is defined in Webster's Third New International Dictionary as, "a watertight chamber used in construction work under water," but, rather, was a cofferdam, which is defined in the same dictionary as, "a temporary watertight enclosure . . . from which the water is pumped to expose the bottom of a body of water and permit construction."

3 Wis. Adm. Code, sec. IND 6.05 (3), when read with the pertinent definitions set forth in the code, indicates that its purpose is to require wearing a protective head covering when men are working underground or in ditches or under other circumstances when it is foreseeable that there is danger that earth or objects are likely to fall as the result of work being carried on overhead. These conditions were not present here.

There is nothing in the Administrative Code that would compel an instruction that it was negligence per se to fail to wear a hard hat under the circumstances here. The instruction was prejudicial because, in effect, the jury was told that, under the facts, Lemberger was negligent.

We do not conclude that the testimony could not be construed to permit the jury to find that Lemberger was negligent; but it was clear error to instruct the jury that a finding of negligence was compelled by the code. If Lemberger was negligent, it was because, in the exercise of ordinary care, he should have worn a hard hat. He was not negligent per se under sec. IND 6.05 (3).

The attorneys for Koehring correctly point out that no objection was made to the instruction prior to submission to the jury. Under the usual rules of appellate procedure,

an objection to incomplete or imperfect instructions comes too late when asserted for the first time after the jury's verdict has been returned. We have, however, consistently held that, when an instruction misstates the law, error can be asserted for the first time after the verdict is returned and on motions for a new trial. *Johnson v. Heintz* (1973), 61 Wis. 2d 585, 593, 213 N. W. 2d 85; *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 585, 164 N. W. 2d 495. Both *Johnson* and *Menge* stand for the proposition that an instruction misstates the law if it is not appropriate to the facts in the case.

The invocation of the provisions of sec. IND 6.05 (3) under the facts here was inappropriate and probably led the jury to conclude that it was required as a matter of law to find Lemberger negligent. This legally erroneous instruction to the jury was prejudicial and requires a reversal of the judgment.

Koehring contends that, even were there errors in the trial, they cannot be raised at this time, because no motion was ever made for a mistrial, and the failure to move for a mistrial was an election to rely on a possible favorable jury verdict and a waiver of the right to assert prejudice. While we have frequently so held, and the cases relied upon by Koehring are to that effect, the rule is not appropriate in the present case. It is applicable primarily to the single egregiously prejudicial statement of counsel or the admission of a single piece of evidence which makes it apparent that a fair trial cannot thereafter be held. The motion for a mistrial, for example, is appropriate under those circumstances where the defendant's insurance coverage came out at trial contrary to the rules that were then acceptable in the Wisconsin courts. *Filipiak v. Plombon* (1962), 15 Wis. 2d 484, 492, 113 N. W. 2d 365; *Beijer v. Beijer* (1960), 11 Wis. 2d 207, 210, 105 N. W. 2d 348. In *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789, plaintiff's counsel in his

opening statement said that he would prove facts highly detrimental to the defendant. When, at the close of the plaintiff's case, it was apparent that those facts had not been proved, we said a motion for mistrial was required because it was then that the party challenging the results of the trial should reasonably have been able to determine that a fair trial would probably not be had. The rule simply provides that, when there occurs in the course of trial a highly prejudicial event which is likely to materially affect the outcome of the trial, the party aggrieved must raise his objection then and move for mistrial. His failure to do so when he reasonably should have known of the prejudicial occurrence constitutes a waiver of the objection.

The plaintiff was not obligated to move for a mistrial when his photographic evidence was rejected by the trial court, or when his request that two attorneys be permitted to deliver the closing argument was denied, or when witnesses he objected to were permitted to testify.

There are other errors alleged which we consider of minor importance in view of our conclusion that the legally erroneous instructions require a new trial. However, we are satisfied that the trial court properly refused on rebuttal the plaintiff's photographs which were intended to show the method of attaching wear blocks on cranes made by other manufacturers. The trial court properly exercised its discretion in excluding the photographs, since they were merely cumulative of evidence that was already in the record and the reception of these additional photographs may well have resulted in jury confusion. *See Rausch v. Buisse* (1966), 33 Wis. 2d 154, 167, 146 N. W. 2d 801; *City of Franklin v. Badger Ford Truck Sales* (1973), 58 Wis. 2d 641, 656, 207 N. W. 2d 866.

Nor was there error in the trial court's permitting witnesses of the Koehring Company who had not been listed as expert witnesses before trial to testify in re-

spect to the practice of crane operators in the maintenance of cranes and the bolts on wear blocks. These men were not expert witnesses. They were testifying about the usual practices employed in maintenance and were not experts in the sense that they should have been identified as such. Moreover, the cross-examination of these witnesses resulted in the elicitation of testimony highly favorable to Lemberger. Their testimony was properly received. From the transcript of the cross-examination, it is apparent the attorneys for Lemberger were in no way prejudiced because they had no opportunity to take the depositions of these witnesses as experts prior to trial.

There was no error in the trial judge's exclusion of Attorney Emmert's oral argument on behalf of the plaintiff following the argument of plaintiff's other attorney, George Kersten. The record shows that the matters in issue were effectively covered by Attorney Kersten. Additionally, the excluded argument of Attorney Emmert was primarily directed to the question of damages, which are not in issue on this appeal. We see no prejudice in the exclusion of the second oral argument.

Other errors are asserted by the plaintiff, but we conclude that they are without substance and resulted in no prejudice to the plaintiff.

The instruction to the jury in respect to the protective head covering was erroneous and prejudicial and requires a reversal.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on all issues.

*On motion for rehearing:*

PER CURIAM. The mandate is revised to provide: "Judgment reversed and cause remanded for a new trial on the liability issues only."