EICH, J.
(dissenting). I agree with the majority’s disposition of the enticement charge. O. was picked up and forcibly carried into the room where the assaults occurred. He testified that he did not want these acts to occur and that they hurt him. Lamb was properly charged with, and convicted of, first degree sexual assault for these forcible actions. But there was no evidence of enticement as that term is commonly defined and as it is defined in the law.
However, I disagree most strongly with the majority’s reversal of the sexual assault convictions, based on its belief that the admission of RaChelle Luethold’s testimony constituted reversible error.
*466 Luethold, a child and family therapist who was experienced in working with sexually abused children, testified generally about children’s responses to sexual abuse and about the emotional and other problems typically associated with abused children. Among the responses and problems experienced by such children are poor concentration, depression, anger, aggression, guilt, anxiety, fear, and education dysfunctions. After this generalized discussion, Luethold was permitted to testify that she had observed O. exhibiting anger and fear toward his father, aggressive behavior, fear of leaving home, and bedwetting, and he was experiencing problems at school. In addition, he drew figures with distorted body images, another trait Luethold said was frequently observed in children who have been sexually abused.
The majority adopts Lamb’s argument that Luet-hold’s testimony was the equivalent of an expert opinion that O. was telling the truth when he reported the alleged assaults — a practice condemned in State v. Haseltine, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984). In Haseltine, a psychiatrist testified as to patterns of behavior generally exhibited by incest victims. He was then allowed to give his expert opinion that there "'was no doubt whatsoever’ that [the defendant’s] daughter was an incest victim.” Id. The court held that the psychiatrist’s "opinion that [the defendant’s] daughter was an incest victim is an opinion that she was telling the truth,” id., and was thus inadmissible as violative of the general rule that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physical *467 ly competent witness is telling the truth.” Id., citing State v. Middleton, 657 P.2d 1215, 1221 (Or. 1983).[1]
Similarly, in State v. Jensen, 141 Wis. 2d 333, 337, 415 N.W.2d 519, 521 (Ct. App. 1987), "an expert in the behavior exhibited by sexually abused children” testified that, in his opinion, '"the kinds of acting out behavior [observed in the victim were] consistent with children who were victims of sexual abuse[.]’” Noting that "[i]n essence, [the expert] testified that [the victim’s] behavior following the alleged sexual assault demonstrated that she had been sexually assaulted,” the court held that "the trial court erred by permitting [the expert] to express an opinion on th[e] issue.” Id. at 340-41, 415 N.W.2d 522.
In this case, no such opinion was admitted. Indeed, it appears that Luethold did not offer any *468 opinion evidence at all. She simply testified as to certain behavioral characteristics commonly seen in children who have been sexually assaulted, and she reported her observations of O.’s behavior during her meetings with him. She did not, as in Haseltine, testify that there " 'was no doubt whatsoever’ that [O.] was an incest victim.” Id., 120 Wis. 2d at 96, 352 N.W.2d at 676. Nor did she offer her opinion, expert or otherwise, that O.’s behavior was "'consistent with [that of] children who were victims of sexual abuse,’” as in Jensen, 141 Wis. 2d at 337, 415 N.W.2d at 521. Indeed, she did not even opine that O.’s behavior was "typical” of child sexual assault victims as the witness did in Middleton. She simply testified about sexually abused children generally and about her observations of O. The jury was free to draw its own conclusions and its own inferences from that testimony.
The majority appears to question the jury’s ability to perform that function, for it suggests that the expert’s testimony will somehow force all twelve jurors to abandon their own views of the evidence, and instead: (1) to interpret Luethold’s factual testimony as the equivalent of an expert opinion on the defendant’s guilt or innocence and (2) then, contrary to the judge’s instructions and in violation of their oath as jurors, to accept that "opinion” as dispositive, thus turning their decisional duty wholly over to Luethold.
I reject that assumption. I give jurors more credit than that. Indeed, I have seen the assumption disproved time and again by a thousand or more jurors whom I have observed from the trial bench — often in the most difficult and sensitive cases — carrying out their responsibilities with care, devotion, and discretion.
*469 Beyond that, cases like Haseltine, Jensen — and now Lamb — indicate to me that courts are losing sight of the fact that child victims and witnesses simply do not fit into a judicial system whose rules are designed by and for adults — particularly in cases such as this where their credibility is routinely called into question. And it is a real problem. While the exact figures may vary because of sampling techniques and the content of questions,[2] researchers in the field agree that "sexual victimization occurs in the lives of an important minority of all children.” D. Finkelhor, Sexually Victimized Children 56 (1979). It is equally true that no child is too young to be the object of sexual or aggressive interest.
I agree that the credibility of witnesses in a criminal trial should not turn on the outcome of a battle among experts. It cannot be denied, however, that much expert testimony, whether in civil or criminal cases, is offered — and accepted — to show that another witness’s statements or conclusions should not be believed. And that fact alone has never been *470 thought to render the testimony inadmissible. The test is not whether opinion evidence embraces an ultimate issue to be decided by the jury, but whether the expert’s testimony, if believed, will assist the jury in understanding the evidence or determining a factual issue. Jacobson v. Greyhound Corp., 29 Wis. 2d 55, 62-63, 138 N.W.2d 133, 136-37 (1965).
Witness credibility is often the key issue in criminal cases, and with respect to most crimes such questions are peculiarly within the competence of the jury, whose common experience usually affords sufficient basis for the assessment of credibility. Where the subject is the sexual abuse of children, however, the very nature of the case "places lay jurors at a disadvantage ... [for] the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse.” State v. Myers, 359 N.W.2d 604, 610 (Minn. 1984).
In other areas of the civil and criminal law we have made special provisions for children based on their special needs. The juvenile code is but one example. The message of Jensen, and now the Lamb majority, is, however, that no such provisions are available in child sexual assault cases. The message to the child is: "You’re on your own in an adult courtroom, dealing with a very adult situation, facing adult attorneys, and all of the adults’ rules are in full force and effect.” This is not a message I would send. I would confine Haseltine and Jensen strictly to their facts; and because I believe those cases are factually *471 distinguishable, I would affirm Lamb’s sexual assault convictions.[3]

 In Middleton, the witness, a county juvenile counselor, testified that the victim’s behavior, which she had learned about from supervising the child’s case, was "very much in keeping with children who have complained of sex molestation at home,” id., 657 P.2d at 1218 n. 5, and was "not different at all, [but] very typical for a teenage sex abuse victim.” Id. at 1219 n. 6. The observed behavior included running away, skipping school, and retracting an initial complaint to the police. Id.
The Middleton court upheld the trial court’s admission of the counselor’s testimony, dismissing the argument (adopted by the majority here) that the "jurors could be so impressed by the 'aura of reliability’ of expert testimony that they might trust it more than their own perceptions.” Id. at 1221. Most significantly, the court held that the witness’s testimony — that the victim’s observed behavior was "very much in keeping” and "very typical” of the behavior of sexually abused children — did not constitute "an opinion on the truth of the victim’s testimony.” Id. at 1219.
As indicated, I would so hold in this case, where the "expert” testimony was very similar, and may even be considered much less direct than that in Middleton.

 Surveys inquiring into portions of the male and female populations of the United States who were sexually abused as children yielded results ranging from lows of eight percent (for women) and three percent (for men) to highs of twenty-eight percent and nine percent, respectively. Typically, the percentages are in the range of twelve percent to twenty-two percent for females and five percent to six percent for males. McCord, "Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray Into the Admissibility of Novel Psychological Evidence,” 77 J. Crim. L. & Criminology 1, 3 (1986).
Earlier this spring the national press reported the results of a survey of 1,700 sixth- to ninth-graders in which twenty percent of the girls and six percent of the boys disclosed that they had been sexually abused. Children’s Sexual Assault Attitudes Shock Researchers, The Capital Times, Madison, Wis., May 3, 1988, 6.

 There were other issues raised on the appeal which were not discussed by the majority in light of its finding of reversible error on the evidentiary question. With respect to those issues, I am satisfied first that the trial court did not abuse its discretion in allowing evidence of O.’s prior consistent statements and evidence of another witness’s criminal record for impeachment purposes. I also believe that the trial court correctly excluded evidence relating to the victim’s alleged observations of other sexual activity, and that Lamb is not entitled to a new trial in the interests of justice or because of the state’s failure to disclose a witness’s prior statement. Finally, Lamb has not established that he was denied the effective assistance of counsel.